## Deins' Administrator v. Gibbs et al.

(Decided Jan. 25, 1935.)

470

GUY H. BRIGGS for appellant.

POLK SOUTH, Jr., for appellees.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

At the time of the transactions here involved, Joseph R. Deins resided in the city of Cincinnati, Ohio, and operated a retail automobile business therein. On September 11, 1931, the appellee Jack Gibbs, one of the defendants below, contracted with Deins to purchase

an automobile and agreed to and did execute his note for the deferred payments aggregating $810.40, with his mother, the appellee and other defendant below, Mrs. Julia Gibbs, as surety thereon. As collateral security for the note, Jack Gibbs executed and acknowledged a mortgage on the automobile, which mortgage his mother also signed, but her name is not mentioned in its body, nor was she in any wise obligated by any of its terms, nor did she acquire any ownership interest in the automobile under the contract of purchase. In such conditions and circumstances, her signature to the mortgage had no legal effect whatever, either as against her or in favor of the mortgagee. See Goodrum's Guardian v. Kelsey, 244 Ky. 349, 50 S. W. (2d) 932.

Following the default in payments, this ordinary action was filed in the Franklin circuit court against appellees, both of whom resided in Frankfort, Ky., to recover the balance due on the note, amounting to $507.15. Jack Gibbs failed to answer, and judgment by default was taken against him, but his mother and codefendant filed answer in which she acknowledged signing the note as surety for her son, but averred that at the time she was a married woman and could not, under the provisions of section 2127 of our present Statutes, obligate herself as surety for any one, except by putting her property in lien by a mortgage duly executed and acknowledged, which was not done in this case. Another paragraph pleaded that Deins, as mortgagee of the automobile, had procured some kind of indemnity policy against its theft, the proceeds of which, if the contingency insured against should happen, should be payable to him so far as his interest might appear; and that, since the mortgaged automobile had, prior to filing the answer, been stolen from Jack Gibbs, it was the duty of the plaintiff to look to such indemnity insurance for the payment of his note before proceeding to collect it from the makers. Both the note and mortgage were filed as exhibits with the petition and thereby became a part of the record. A demurrer was filed by plaintiff to both paragraphs of the answer, and it was first sustained by the court; but later in the term the court reconsidered that ruling and set it aside. There followed an order overruling the demurrer, and as plaintiff declined to plead further, his petition was dismissed. To reverse this ruling, he prosecutes this appeal. Since the appeal has been taken, he has died,

and the appeal has been revived in the name of his personal representative.

The matters set forth in the second paragraph of the answer, relating to the indemnity insurance against theft of the automobile, are not argued on this appeal, the brief being directed exclusively to the defense contained in its first paragraph. Neither does appellant's brief discuss the alleged defense contained in the second paragraph of the answer, from which it would appear that both parties to the controversy regard that defense as being unmeritoroius and insufficient, and we think this is plainly true. We, therefore, do not feel called upon to enlarge upon it by extended or other discussion. No one relies upon it in this court, and, consequently, we are referred to no case sustaining it, nor have we been able to find one; but, on the contrary, it is everywhere held that a creditor holding a collaterally secured note of his debtor or debtors may proceed to recover a personal judgment against the latter without first resorting to his security. Perhaps the latter might, under certain conditions and certain circumstances, be subrogated to the rights of the creditor in such collateral security (the alleged indemnifying policy), but no such question is presented here. It was made to appear in the record, and is conceded to be true, that under the laws of the state of Ohio no restriction upon the right of a femme covert to become surety on a note or other obligation prevails, but, on the contrary, she may, under the laws of that state, incur such liability the same as any other sui juris individual, and this fact was before the trial court when he dismissed the petition as against Mrs. Gibbs. It will, therefore, be seen that the only question for determination on this appeal is whether or not the defense interposed by the surety, Mrs. Gibbs, in reliance on the section of our Statutes, supra, was, under the facts presented, available to her. To a determination of this, we will now address ourselves.

The question is divisible into: (a) Whether the law of Kentucky or that of Ohio governs the rights of the parties under the facts presented. This is to be determined by the place of the making or by the place of performance of the contract executed by Mrs. Gibbs (in this case only the note, since, as we have seen, she did not become a party to the mortgage for the reason

stated, although she actually signed it). (b) Whether, for any reason, the courts of this commonwealth will administer the law of the state of Ohio, although contrary to the provisions of the section of our Statutes, supra, which, it is insisted, declares the public policy of this jurisdiction with reference to such suretyship by married women. First, taking up subdivision (a), it will be seen, as manifested by the record, that the place of the contract for the purchase of the automobile was in Cincinnati, where the plaintiff resided and where his business was conducted. The note expressly declares on its face that it was payable to plaintiff at his office in Cincinnati, Ohio. The only reference made to the note in the mortgage expressly repeats that statement by saying that the note secured thereby was payable "at the office of Jos. R. Deins, Cincinnati, Ohio." There are some allegations in the answer, or some of the amendments thereto, to the effect that it was understood by the parties that the transaction should be a Kentucky one, but it is nowhere alleged that it was agreed by the parties that the note should be payable in Frankfort, Ky., or anywhere else in the state, contrary to the express terms contained in the note, and which terms, as we have seen, are repeated in the mortgage.

It is true that a paragraph in the latter says: "It is understood and agreed, even though this mortgage may be executed outside the State of Kentucky, that the terms and conditions thereof are to be performed in that county, in Kentucky, in which it is herein recited the Mortgagor resides; said property is to be removed forthwith, to the residence of the Mortgagor," and it is strenuously argued that, by virtue thereof, the entire transaction, including the execution of the note, was thereby converted into one to be performed in this commonwealth, and cases are cited wherein we have held that a contract that is evidenced by more than one writing simultaneously executed must be considered together in construing it and determining the rights of the parties thereto. With this we have no quarrel, since that principle of law is thoroughly settled and has been applied by this court in numerous cases. But in this case the mortgage is an entirely separate transaction from the obligation to pay for the thing mortgaged, in this case the automobile. The mortgage is but a security for the debt evidenced by the note, and since it was known by all parties that the mortgaged

security was intended to be taken to Kentucky, to the residence of the purchaser, the excerpt therefrom was made therein so as to eliminate any question of conflict of laws if it became necessary to enforce it; but that stipulation did not purport to alter, nor do we conclude it had the effect of altering, any stipulation on the face of the note, and especially none with which it was not in conflict.

The general rule is that a contract is to be construed, including the obligations of the parties thereunder, by the laws of the place where it is made, unless it appear therefrom that it was the intention and purpose of the parties to provide otherwise (see text in 13 C. J. 248); and, in determining where a contract is made, the text in the same volume, on pages 580, 581, says:

> "A contract is as a rule considered as entered into at the place where the offer is accepted, or where the last act necessary to complete it is performed. So where delivery is regarded as essential to the completion of the contract, it is regarded as made at the place of delivery."

A great number of cases are cited in the notes to that text, many from this court, one of the latest of the latter being Swann-Day Lumber Co. v. Cornett, 161 Ky. 98, 170 S. W. 516. But in the absence of any such indicia appearing in the contract, the general rule is that the law of the place of performance should measure the rights of the parties to it. See text in same volume of Corpus Juris, page 249. On the next page (250) it is stated, in substance, that where different and distinct obligations created by the contract are to be performed in different states, each provision will be interpreted and applied under the law of the state where it is to be performed.

There may be, and are, exceptions to those general rules, as so stated, but none is made to appear in this record, and for this reason we deem it unnecessary to state them or to attempt to point out that they do not apply in this case, since we conclude that this case, in all of its substantial aspects, was determined by us against the femme covert surety in the case of Barbee & Co. v. Bevins, etc., 176 Ky. 113, 195 S. W. 154. In that case, two married women signed notes executed by

their husbands as principals to a firm in Williamson, W. Va. One of the wives was an infant at the time, and both of them were married. They executed no mortgages on any property to secure the note they signed as sureties for their husbands, and they signed the note at their respective homes in Pike county, Ky., but it was made payable at a bank at the home of the payee, and, when executed by the sureties, it was delivered to the payee in that state. All of this appears to us to be in all substantial respects completely analogous to the admitted facts in this case. We held in that opinion that the rights of the parties were governed by the laws of the state of West Virginia, after having first determined that the note involved therein was under the facts a West Virgiina contract and was to be performed in that state, where there was no such relieving provision against a married woman becoming surety for another as is contained in section 21⸽7 of our Statutes.

The infant surety in that case was released from liability, not because the contract of an infant is void, but presumptively because the laws of West Virginia also relieved an infant from liability as surety for another, or from liability on any other contract not incurred for necessaries, the same as is done under our law. However, the adult surety, notwithstanding she was then a femme covert, was held liable on the note as surety for the principals therein upon the sole ground that the note, for the reasons stated, should be governed by the laws of West Virginia, which did not exempt a married woman from incurring the liability of such suretyship.

It was furthermore urged in that case, as is done in this one, that a negative answer should be given to subdivision (b), supra, and that, while all we have said in this case might be true, yet our public policy as manifested in the section of the Statutes, supra, would require this and other Kentucky courts to refuse to administer the laws of the state of Ohio in direct conflict with our Statutes upon the subject. But that question was fully gone into in the Barbee opinion, and it was rejected and disallowed. We need not repeat the reasoning employed therein, since it may be found by consulting that opinion, and, for the same reason, it will not be necessary to cite the authorities therein relied on in substantiation of the conclusion reached.

Finally, it is most confidently asserted in the brief for appellee that Mr. Justice Holmes of the Supreme Court of the United States, in writing the opinion of that court in the case of Union Trust Co. v. Grosman, 245 U. S. 412, 38 S. Ct. 147, 62 L. Ed. 368, upheld the principles contended for by counsel for appellee; but our most careful reading of that opinion convinces us that counsel is mistaken. In the first place, the facts therein were by no means similar to those appearing in this case. But if they were, the only point decided in that opinion was, and is, that federal courts would follow and administer the laws of a state as declared by its courts. The married woman who was the surety in that case resided in Texas, whose laws upon the subject of her right to become surety were similar to those in this state, as embodied in the section, supra, of our Statutes. The courts of Texas held that in administering that statute or law it would not, under the doctrine of comity, apply the laws of another jurisdiction in which the surety contract was made, although no such exempting law prevailed in that jurisdiction. It was to that extent contrary to our opinion in the Barbee Case, supra, as well as contrary to those of a majority of the courts of this country. Nevertheless, the highest court of the state had so held, and the United States District Court, in which that litigation arose, administered that interpretation, and Mr. Justice Holmes affirmed it in the opinion written by him in the Grosman Case. It is, therefore, plain, as we think, that the expressed confidence of counsel in reliance on that opinion is misplaced. If, however, we should be mistaken as to the correct import of that opinion, we yet conclude that we should follow the Barbee decision, supra, as we are convinced it embodies the correct interpretation and application of the principles of law involved, arising upon the facts.

For the reasons stated, the judgment dismissing the petition as to the surety on the note sued on is reversed, with directions to set it aside and to sustain the demurrer to the answer and its amendments, and for other proceedings not inconsistent with this opinion.