STEVENSON *et al. v.* LIMA LOCOMOTIVE WORKS, INC.

*(Knoxville,* September Term, 1942.)

Opinion filed July 3, 1943.

Albert Carruthers and Hillsman Taylor, both of Memphis, for appellants.

C. H. NEVILLE, of Lima, Ohio, and WM. M. HALL and WM. G. HALL, both of Memphis, for appellee.

MR. JUSTICE NEIL delivered the opinion of the Court.

This case is before us on appeal from the Chancery Court of Shelby County. The Chancellor dismissed complainants' bill after a hearing on bill and answer and a stipulation of facts. The sole determinative question is whether or not a conditional sales contract between the parties is governed by the law of Ohio, Arkansas, or Tennessee. Complainants insist that it is a Tennessee contract, while defendant contends that it is an Ohio contract, as held by the Chancellor, or, if not, then the law of Arkansas is applicable in determining the rights and interests of the parties.

According to the stipulation of facts, the defendant was chartered by the State of Virginia. Its main office and manufacturing plant is in Lima, Ohio, with a branch office in Memphis, Tennessee. It was domesticated and authorized to do business in Tennessee at the time the contract was executed.

The complainant, Earl Stevenson, a resident of Elaine, Arkansas, and a member of a partnership composed of himself, R. A. Stevenson, and J. T. Cathey, went to Memphis on September 26, 1936, to buy a valuable machine called a "Dragline", which was manufactured by the defendant. He went to the branch office of defendant and there signed a "Sales Agreement" for the purchase of the machine, valued at $20,000. It is agreed that he bought it for the partnership and that it is a valid conditional sales contract. He paid $2,000 in cash and executed twenty-two notes for the balance. These notes, representing deferred payments, refer to the "Sales Agreement",

which was dated September 26, 1936, and each contains an express retention of title in the defendant, and are payable at 77 McCall Street, Memphis, Tennessee. The said notes are dated October 1, 1936. The last clause in the "Sales Agreement" provides:

"Approval: This instrument shall be a valid and binding agreement only when it is accepted by an executive officer of the Company."

Following the signing of this instrument and signing of the notes also, they were forwarded to the home office in Lima, Ohio, for acceptance. The "Dragline" was shipped to complainants on October 1, 1936, to Chanute, Kansas, and notes dated on the same day by some officer or agent of the company in Lima. The "Sales Agreement" was not formally accepted by an executive officer of the company until October 13, 1936.

After the shipment of the machine to Chanute, Kansas, it was later used by complainant in Missouri, Louisiana, Tennessee, and Arkansas. It was in Mississippi County, Arkansas, at the time it was repossessed by defendant following default in making payment by complainant.

The stipulation further shows, Section 10, that the Stevenson Company, with company checks, made all payments under the contract. Its checks were mailed to the Memphis Office and by that office sent to the Lima Locomotive Works at Lima, Ohio. The notes thus paid and discharged were mailed to Stevenson Company. Eleven notes were paid in full, two for $1,000 each, and nine for $800 each, and $500 paid on the twelfth note. On July 8, 1939, the complainant was in default to the extent of $9,743.51. On said date the defendant replevied the machine and received it from the sheriff, taken under the replevin writ. Judgment was rendered confirming the de-

fendant's right to said machine. There was no advertisement and resale according to the conditional sales law of Tennessee. Code 1932, sec. 7286 et seq.

Section 16 of the Stipulation provides that ''if the law of Tennessee does not apply to and govern the contract between the parties, their rights and remedies, then the laws of Ohio or Arkansas apply.'' The ''Sale Agreement'', which is a part of the stipulation, contains the following:

''It is the express intention of the parties hereto that this agreement and all the terms hereof shall be in conformity with the laws of any state wherein this agreement may be sought to be enforced, and if it should appear that any of the terms hereof are in conflict with any rule of law or statutory provision of any such state, then the terms hereof which may conflict therewith shall be deemed inoperative and null and void in so far as they may be in conflict therewith, and shall be deemed modified to conform to such rule of law.''

The complainant brought suit in the Chancery Court against defendant to recover the amount paid on the contract for its failure to comply with the provisions of the conditional sale contract law of Tennessee. The defendant answered denying liability, alleging that it was an Ohio contract and not a Tennessee contract. The Chancellor entered a decree in favor of the defendant, which complainant assigns as error.

 We think it is clear upon the stipulation that, if the contract in question is not a Tennessee contract, the complainant has no case. In presenting the question considerable importance is attached to the fact that the ''Sales Agreement'' was not ''accepted by an executive officer of the company'' at Lima, Ohio, until October 13,

1936; whereas, the notes signed by Earl Stevenson and forwarded to Lima were dated October 1st at Lima, Ohio, and the machine delivered to the railroad on that date. Responding to this contention, we hold that the signing of the Sales Agreement by the vice-president was an unimportant formality. The shipment of the machine on October 1st and dating of the notes on said date were a complete acceptance by the defendant and thereafter the contract was binding upon both complainant and defendant.

It is earnestly insisted that the conditional sales statute is controlling in the instant case; that the contract was concluded between the parties at 77 McCall Street, Memphis, the "branch office", being the company itself and not the "traveling agent" of the company. It is true that the Sales Agreement was signed in Memphis by complainant and $2,000 in cash paid at the Memphis office; that notes were paid in Memphis. It appears, however, that there was something yet to be done by the defendant company at Lima, Ohio, i.e. the "acceptance of the contract", the dating of the notes by the defendant and shipment of the machine. We think it is immaterial as to the manner of forwarding the papers to the home office, whether by mail or personal delivery. The notes were to be a binding obligation only upon acceptance, and were to bear the date of the delivery of the machine, which was, as above stated, October 1, 1936. The intention of the parties to this contract is controlling in the instant case. This must be found in the contract itself, as well as the situation of the parties and the particular necessity of the time and place and use of the subject matter of the contract. It was said by this Court in *Bradford & Carson* v. *Furniture Co.*, 115 Tenn., 610, 616, 92 S. W.,

1104, 1106, 9 L. R. A. (N. S.), 979, opinion by Mr. Justice
SHIELDS:

"All contracts should be construed and interpreted,
when it is possible to do so, in accordance with the in-
tention of the parties, so as to effect the ends contem-
plated and contracted for by them."

It clearly appears from the stipulation that both parties
to this contract knew from the beginning that complain-
ant was to use the "Dragline" in several states in filling
contracts with the United States Government. Notwith-
standing a provision in the Sales Agreement that the
machine "shall not be carried beyond the confines of
Phillips County, Arkansas, without the written consent of
the Seller," the said machine was shipped by defendant
from Lima, Ohio, direct to Chanute, Kansas. Later it
was used in Missouri, Louisiana, Tennessee, and Arkan-
sas. Knowing therefore that the right to possession and
use of said machine was referable to the laws of states
other than Tennessee, it was highly proper and important
that the parties agree, as they did, that their rights as
well as remedies should be governed by the laws of the
state where said contract was to be enforced. The
"Dragline" would have been of little use to complainant
if the latter had been compelled to let it remain in a
given locality. Moreover, there was never a moment
from the date of shipment of the machine to the time
of its repossession by the seller that the complainant
could have been prosecuted criminally for a violation of
the laws of Tennessee (Section 1, Chapter 557, Acts of
1909), which make it a felony for any purchaser of prop-
erty where title is retained to remove it beyond the limits
of a state.

■ "The parties to a contract may contract with reference to the laws of any state or country, provided it is done in good faith, and provided the place selected has a real or substantial connection with the transaction or subject matter of the contract." 17 C. J. S., Contracts, sec. 12, p. 337, citing many cases.

In footnotes to the foregoing statement of the rule, it is said:

"The express adoption of the foreign law by the parties has the same effect as adoption by rule of law." Citing *Globe Slicing Machine Co.* v. *Murphy,* 161 Md., 667, 158 A., 26, 28.

"Where persons residing in different states contract, they can select laws of either state to govern it." *Farm Mortgage & Loan Co.* v. *Beale,* 113 Neb., 293, 202 N. W., 877; *Clark* v. *Gibbs,* 5 Cir., 69 F. (2d), 364.

See also *Fidelity Loan Sec. Co.* v. *Moore,* 280 Mo., 315, 217 S. W., 286, 288; Restatement, Conflict of Laws, Sec. 358; *Castleman* v. *Canal Bank & Trust Co.,* 171 Miss., 291, 156 So., 648, 649; *Jefferis* v. *Kanawha Fuel Co.,* 182 Wis., 203, 196 N. W., 238, 239; *George* v. *Haas,* 311 Ill., 382, 143 N. E., 54, 55; *Elk River Coal & Lumber Co.* v. *Funk,* 222 Iowa, 1222, 271 N. W., 204, 110 A. L. R., 1415.

While the "place of performance" rule has been criticised, as in *Bernstein* v. *Lipper Mfg. Co.,* 307 Pa., 36, 160 A., 770, and some other cases, we think the weight of authority supports the view we have expressed in the instant case. Of course, where the parties agree that their rights shall be determined by the laws of a foreign jurisdiction, the contract must be executed in good faith and the transaction to which it relates be properly referable to such state.

In the case of *Manufacturers Finance Co.* v. *Johnson & Co.,* 15 Tenn. App., 236, 239, the parties contracted to be bound by the laws of Delaware. The Court held that, since no part of the contract was referable in any respect to the State of Delaware, the laws of Delaware had no application. It was further held that, while the contract was signed by the obligor in Tennessee and later "accepted" by the obligee in Maryland, the laws of the latter state governed the rights of the parties.

 Counsel for the complainant has referred the Court to the case of *Jewett, Jr., Inc.,* v. *Keystone Driller Co.,* 282 Mass., 469, 185 N. E., 369, 371, 87 A. L. R., 1298, sustaining their contention. We think it is not controlling. In fact, the holding of the Court is not in conflict with the authorities above cited. The following is quoted with approval, to which we agree:

"The law of the place where the contract is made is, without any express assent or agreement of the parties, incorporated into and forms a part of the contract. Their contract is presumed to be made with reference to the law of the place where it is entered into, *unless it appears that it was entered into with reference to the law of some other state or country."* (Italics ours.) Citing numerous authorities.

The Court further observed:

"It could have been found by the trial judge that the parties had no intention that the performance of the contract of conditional sale was to be in New Hampshire, or that the law of any other state was to govern their rights."

 We are well aware of the holding of this Court that in all conditional sales contracts the Act itself becomes a part of the contract. *Wallis* v. *B A C Corpora-*

*tion,* 175 Tenn., 659, 137 S. W. (2d), 274, and other cases. But the rule thus announced can have no application where the contract from the beginning is not to be performed in Tennessee. We are not in agreement with the insistence of able counsel for complainant that in such circumstances non-resident sellers of property, domesticated in Tennessee, will be enabled to nullify the provisions of the statute. Where property is sold and delivered to the purchaser in this state, the purchaser is not permitted to remove it from the limits of the state. Both parties must comply with the statute in every respect. There is no opportunity for evasion. The laws of Tennessee must govern unless it clearly appears from the contract itself that it is to be performed from the beginning in another state. In such circumstances it is not a question of comity, but one of agreement between the parties. Moreover, the question of waiver of the advertisement and sale as required by our statute and under our decisions has no application because the parties expressly agreed in no uncertain terms to be bound by the laws of another jurisdiction.

The decree of the Chancellor is affirmed.