DEATON *v.* VISE *et al.*

(*Nashville,* December Term, 1947.)

Opinion filed May 3, 1948.

WILS DAVIS and CARUTHERS EWING, both of Memphis, for Deaton.

W. H. FISHER, of Memphis, for Vise and others.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This cause is ancillary to what might be termed a companion cause in the Chancery Court in the State of Arkansas. The Arkansas suit is in reality the original cause and the one now before us was instituted to secure certain equitable relief only in the event complainant was successful in her suit in the State of Arkansas.

The complainant filed her original bill in the Chancery Court in Crittenden County, Arkansas, against J. K. Vise, in which it is alleged that in September, 1945, she negotiated with defendant for a loan of $8,000 to be secured by a mortgage upon property situated in said State and County. She executed the mortgage in question and a series of notes to Vise, the first for $200.00 and 56 others for $150.00, all bearing interest at six per cent per annum. It was further alleged that 36 of the notes remain unpaid, "aggregating the principal sum of $5,400.00."

The bill further alleges that Vise took advantage of her strained financial circumstances and practiced a fraud upon her, that the contract provided for the payment of usury, that is, at a rate in excess of ten per cent, contrary to the laws of Arkansas. The Arkansas bill prays that J. K. Vise be enjoined from collecting the notes or from negotiating the same and that they be cancelled and declared void *ab initio*.

Two days after the filing of the original bill in Arkansas, the complainant filed her original injunction bill in the Shelby County Chancery Court, naming as defendants J. K. Vise, Garnet L. Shoaf and wife, Mary G. Shoaf. The bill made specific reference to the Arkansas lawsuit and alleged that the notes in question are made payable to the Citizens Bank at Marion, Arkansas, thus showing conclusively that it was an Arkansas contract. That in addition to the mortgage on the Arkansas property, the complainant, in compliance with the demand of J. K. Vise, executed a second mortgage upon property of the complainant situated in Shelby County, Tennessee; that since the inception of the transaction complainant sold the Shelby County property to Mr. and

Mrs. Shoaf, who assumed the payment of the second mortgage indebtedness held by Vise.

The bill alleges that the contract is void because of an exaction of usury, as aforesaid. The defendants Shoaf and wife were enjoined from paying any of the notes to Vise "until the rights of the parties could be declared ."

The principal point at issue is whether or not the contract in question is an Arkansas contract and that it should be held to be void *ab initio* for exacting usury, the same being denounced by the statute of Arkansas. The Shoafs made no defense to this suit, but defendant Vise filed a lengthy demurrer to the bill. It could well be characterized as a speaking demurrer in that it argues some controversial questions.

Contention is made in said demurrer (1) that there is no equity on the face of the bill; (2) that the bill and exhibits "show that there was no usury on the face of the instruments"; (3) that there is no allegation that execution of the notes was an Arkansas contract, and (4) "the bill and exhibits specifically show that even if the original matter was an Arkansas contract, the contract of sale of 1827 South Trezevant Street, Memphis, Tennessee, was a Tennessee contract and that all the parties are residents of Tennessee; and that the matter now involved is wholly a Tennessee contract."

The complainant was permitted to file an amended bill which contains a detailed calculation of interest on 56 notes in order to show that said contract was usurious. The demurrer was refiled (or at least it was so considered) to both the original and the amended bill.

The Chancellor in sustaining the demurrer held that the laws of Tennessee, and "not those of Arkansas con-

trol the rights of the defendant herein." It was also held that "less than ten per cent interest per annum was charged on the contract and hence it was not usurious."

The complainant appealed to this Court and assigned as error the action of the Chancellor in overruling the demurrer. The case presents a rather novel controversy. We are asked to withhold any decision in the instant case, as was the chancellor, until the courts of Arkansas decide whether or not the contract involved was an Arkansas contract and that it was void for usury. It is insisted that "the matter cannot be disposed of until all the proof is in and the Arkansas courts have acted and a proper determination is made as to whether or not these notes (the evidence of the indebtedness) constitute an Arkansas contract."

It is contended that if the Arkansas Courts should hold the contract void for usury, the Courts in Tennessee might be embarrassed in not giving full faith and credit to said decree. In response to this unusual insistence it should be said that the courts of Arkansas might be embarrassed in the event this Court should hold that the contract is a Tennessee contract, and that it was not usurious. We can not decide the question upon any suggestion of a possible difference of opinion and consequently embarrassment to one or the other. We know of no rule of law, or principle of equity, which requires us to await the advice of the courts of another State before deciding a similar question which involves the title and interest to lands located in this State, as well as the personal liability of the defendants.

The object of the original Arkansas suit was for a decree adjudging the contract void *ab initio*, the effect

being to wipe out the mortgage on the Arkansas property by canceling the mortage debt of $5,400.00. The complainant's bill in the instant case seeks to enjoin Mr. and Mrs. Shoaf from paying J. K. Vise any of the notes and to compel them (in the event the Arkansas courts declare the contract void) to execute new notes to complainant in the same amount. Counsel admit on their belief that such a decree could not be entered at present, but that it should be held in abeyance until the Arkansas courts have heard proof and decided that complainant's property in Crittenden County, Arkansas, is exonerated of any and all mortgage indebtedness because of usury.

The foregoing insistence is based upon the unqualified assumption that the rights of the parties must and will be determined solely by the laws of Arkansas; that the courts of that State will so declare and also decide as a matter of fact that the contract is usurious. We cannot delay our decision based upon these uncertainties and improbabilities.

Did the Chancellor err in holding that the rights of the parties under the contract was controlled by the laws of Tennessee and not by the laws of Arkansas? We are here confronted with a legal problem which has vexed the courts since the days of Lord Mansfield and it seems to be no nearer solution now than it was in *Robinson v. Bland*, 1 W. Bal. 234 (1760).

Does the law of the place where a contract is made control or the law of the place of performance? Before giving consideration to the question it is important that we state facts which are by the demurrer admitted to be true. All of the parties to this transaction were residents of Tennessee. The contract was executed in

Tennessee. The complainant, at the same time, executed a mortgage on lands, both in Arkansas and in Tennessee, to secure the payment of the loan. It is insisted for complainant that it is an Arkansas contract, while defendant argues to the contrary.

■ The courts have always looked to the intention of the parties in determining their contractual rights and obligations. Our cases· are too numerous on this point to require citation.

In Williston on Contracts, Vol. 6, sec. 1792, it is said: "The usury cases have developed their own special rule whereby in the absence of circumstances indicating a contrary intent, the parties are presumed to have chosen the law which will uphold the legality of the bargain."

The law, as first stated by the English courts, was that everything connected with the contract is governed by the law of the place where the contract was made (Beàle on Conflict of Laws, Vol. 2, p. 1082), and this general rule has been followed as appears in many State and Federal Court decisions. We need not dwell upon the reason of the rule other than to say that by some authorities it is regarded ·as unsatisfactory in determining the question of intent as well as the legal rights and obligations of the parties.

■ We think the better rule is that a contract is presumed to be made with reference to the law of the place where it was entered into unless it appears that it was entered into in good faith with reference to the law of some other state. *Thomas G. Jewett, Jr., Inc.,* v. *Keystone Driller Co.,* 282 Mass. 469, 185 N. E. 369, 87 A. L. R. 1298.

■ In 17 C. J. S., Contracts, section 12, page 341, it is said that "the place of making rule is based on the

presumed intent of the parties." There appears this further important statement in the same text: "The act of the parties in entering into a contract at a particular place, in the absence of anything shown to the contrary, sufficiently indicates their intention to contract with reference to the laws of that place; . . . or, more accurately, that contracts are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, unless the contracting parties clearly appear to have had some other place in view."

█ That the parties may agree to be bound by the laws of another state, when the agreement is made in good faith and the contract is referable thereto, is undoubtedly true. *Stevenson* v. *Lima Locomotive Works, Inc.*, 180 Tenn. 137, 172 S. W. (2d) 812, 148 A. L. R. 370; *Hubble* v. *Morristown Land & Improvement Co.*, 95 Tenn. 585, 589, 590, 32 S. W. 965.

█ There are numerous cases holding that where an entire contract is to be partly performed in the state where made and partly in another state it is governed by the law of the place of making. But the better rule seems to be "that the presumed intention of the parties, gathered from the attending circumstances, is to be taken as controlling." 17 C. J. S., Contracts, section 12, page 343.

█ It seems clear, however, from the authorities cited herein, that the facts and circumstances indicating that the parties intended that performance was to be governed by the laws of a foreign state must clearly overcome the presumption which favors a contrary intention.

█ Where the parties agree to performance of the contract in a foreign state, the contract itself must be referable to that state, that is, its performance in the particular state is in some way either beneficial or desirable

374

by one or the other of the contracting parties, or for some peculiar reason it should be performed in the foreign state. Their intention, however, no matter how strongly expressed, will not prevail where it amounts to a fraud on the law.

 The notation on the note that it is payable at a bank in Arkansas is by no means conclusive that the parties intended that the laws of that State should govern the transaction. It confers no benefit upon the holder or maker of the note. Where a negotiable instrument is payable at a bank, proof of presentment for payment at said bank is indispensable to a recovery in an action against an indorser. *Peabody Insurance Co.* v. *Wilson*, 29 W. Va. 528, 2 S. E. 888.

 Now the failure of the holder to present it at said bank affects the legal liability of indorsers only. There is no indorser or any one secondarily liable involved in the instant case. This notation on the face of the note does not make it an Arkansas contract in so far as it involves the liability of the maker of the note. It is well settled by the authorities that a creditor holding a collaterally secured note of his debtor may proceed to recover a personal judgment against the latter without first resorting to his security. *Deins' Adm'r* v. *Gibbs*, 257 Ky. 469, 78 S. W. (2d) 346.

 Moreover, since the complainant and the defendants reside in Memphis, Tennessee, what benefit can be derived from paying and collecting this note at Marion, Arkansas? That the transaction is at all referable to that place is entirely fictitious.

 We can not agree that the rights of the defendant must be determined alone by the laws of Arkansas, the alleged place of performance, upon the theory that

he holds a mortgage upon lands in that State. Under the contract he also holds a mortgage upon lands in Tennessee and hence there is no reason for assuming that the parties intended that the place of performance was to be in Arkansas in preference to Tennessee.

 Now, according to the laws of Arkansas, if this contract is usurious it is subject to forfeiture as to both interest and principal. In further considering the question of the intention of the parties as to what law should govern the transaction, it is unthinkable to even suppose that they intended to make a contract by the terms of which it could be declared forfeited at the instance of the borrower. The presumption is to the contrary, according to Williston, *supra*.

In a situation of this kind, Beale on Conflict of Laws, Vol. 2, p. 1115, says: "Where both laws would make the agreement usurious, as has been seen, the intention of the parties was allowed no weight in the earlier cases and the law of the place of making governed. But by the latest ruling from the Supreme Court (U. S. Sup. Ct.) it is governed by the law which invalidates the least portion of it." Citing *Seeman* v. *Philadelphia Warehouse Co.*, 274 U. S. 403, 47 S. Ct. 626, 71 L. Ed. 1123.

 In *Bowman* v. *Price*, 143 Tenn. 366, 226 S. W. 210, the question arose as to whether a contract, which was executed in a foreign state (Alabama) where the rate of interest was 8 per cent was enforceable in Tennessee. It was held: "As respects the claim of usury, neither the place of execution nor of performance conclusively fixes the law governing a note, but this is to be determined from the parties' intention gathered from the instrument in connection with the circumstances surrounding the transaction, but such intent must have been

entertained in good faith, and not to evade any usury law, and the presumption is against an unlawful intent.''

Regardless of what the Arkansas Courts may hold as to this contract, it could in no way affect the right of the defendant Vise to a judgment on the notes and to foreclose the second mortgage against the property in Shelby County now owned by the Shoafs. It will hardly be contended that the Arkansas courts could by any process prevent a foreclosure of said mortgage.

A usurious contract is not sanctioned by the law in either Arkansas or Tennessee. In the former, such a contract is not enforceable. Code, section 9401, Laws of Arkansas, provides: ''What Contracts Usurious. All contracts for a greater rate of interest than ten per cent per annum shall be void as to principal and interest, and the General Assembly shall prohibit the same by law. Art. 19, sec. 13, Const.''

Section 9402 of the Code declares such usurious contracts to be void.

Moreover, it may be conceded that in Arkansas commercial paper that is tainted with usury is void in the hands of an innocent purchaser. *People's Sav. Bank* v. *Raines*, 175 Ark. 1155-1159, 2 S. W. (2d) 20; *Park* v. *Bank of Lockesburg*, 178 Ark. 669, 11 S. W. (2d) 483.

In Tennessee, however, if usury does not appear on the face of the contract, it is valid to the extent of the money loaned and lawful interest, and voidable only as to the usurious excess and to this extent the courts enforce the contract. *Stephenson* v. *Landis*, 82 Tenn. 433; *Bank* v. *Walter*, 104 Tenn. 11, 17, 55 S. W. 301; *Family Loan Co.* v. *Hickerson*, 168 Tenn. 36, 73 S. W. (2d) 694-697, 94 A. L. R. 664.

We are in no way concerned with the difficulties which may confront the defendant if and when he undertakes to foreclose his mortgage upon the lands in Arkansas. No doubt that particular phase of the contract is governed by the laws of that State. But his right to a judgment on the notes, as well as to foreclose upon the lands in Tennessee is governed by the laws of this State.

We think the Chancellor correctly held that it was a Tennessee contract and was not usurious. We are furthermore of opinion that he might well have sustained the demurrer upon the ground that there was no equity on the face of the complainant's bill.

All assignments of error are overruled and the decree of the Chancellor affirmed.

All concur.