## In re TECHNOLOGY FOR ENERGY CORPORATION, Debtor.

PUBLIC SERVICE ELECTRIC AND GAS COMPANY, and Bechtel Construction, Inc., As Agent for Public Service Electric and Gas Company, Plaintiffs,

v.

The AMERICAN INSURANCE COMPANY, Defendant.

Bankruptcy No. 3–85–00455.
Adv. No. 3–88–0006.

United States Bankruptcy Court,
E.D. Tennessee.

June 21, 1988.

Hunton & Williams, John A. Lucas, Jeffrey S. Norwood, G. Mark Mamantov, Knoxville, Tenn., for plaintiffs.

Baker, Worthington, Crossley, Stansberry & Woolf, Richard T. Sowell, Nicholas A. Della Volpe, Knoxville, Tenn., for defendant.

## MEMORANDUM ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

RICHARD S. STAIR, Jr., Bankruptcy Judge.

Defendant, The American Insurance Company (American), filed a motion for partial summary judgment on March 25, 1988.[1] By its motion American seeks dismissal of Counts II and IV of plaintiffs' complaint, each of which prays for a determination of liability against American pursuant to Tenn.Code Ann. § 56–7–105(a) (Supp.1987).[2] American asserts that Tenn.

Code Ann. § 56–7–105(a) (Supp.1987) has no application since the parties contracted that New Jersey law governs their transaction. Alternatively, American contends that if the court should find Tennessee law does apply, the performance and payment bonds it executed as surety for the debtor do not fall within the scope of the statute. According to American, there is no genuine issue as to any material fact relative to Counts II and IV and it is thus entitled to a judgment dismissing these counts as a matter of law. Fed.R.Civ.P. 56, incorporated into Fed.R.Bankr.P. 7056.

This is a noncore proceeding. 28 U.S.C. A. § 157(c)(1) (West Supp.1988). The parties have consented to the entry of appropriate orders and judgments by the bankruptcy judge. 28 U.S.C.A. § 157(c)(2) (West Supp.1988).

### I

Public Service Electric and Gas Company (PSE & G) owns and operates the Hope Creek Generating Station (Hope Creek), a nuclear-powered electric generating facility, located in New Jersey. Bechtel Construction, Inc. (Bechtel), assignee of Bechtel Power Corporation, was retained by PSE & G as its agent to oversee construction of Hope Creek.

During the construction of Hope Creek, PSE & G and Bechtel were required to install a radiological monitoring system (RMS). On July 30, 1982, Bechtel entered into two purchase orders with the debtor,

---

1. Plaintiffs commenced this action for breach of contract by filing their complaint on July 20, 1987, in the United States District Court for the Eastern District of Tennessee. On October 27, 1987, the District Court determined this proceeding to be related to a case under title 11 and referred the proceeding to the bankruptcy court for disposition pursuant to 28 U.S.C.A. § 157(c)(1) and (2) (West Supp.1988).

2. Tenn.Code Ann. § 56–7–105(a) (Supp.1987) provides:

   **56–7–105. Additional liability upon insurers and bonding companies for bad-faith failure to pay promptly.**—(a) The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the same within

sixty (60) days after a demand shall have been made by the holder of the policy or fidelity bond on which said loss occurred, shall be liable to pay the holder of said policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for said loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of said policy or fidelity bond; and, provided, further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed.

No. 10855–J–361–AC (No. 361) and No. 10855–J–371(Q)–AC (No. 371), in the amounts of $3,067,962 and $805,709, respectively, to produce the RMS, including computers and computer software, for installation at Hope Creek. Each written purchase order is governed by a set of numbered "General Conditions," including the following:

1. COMPLETE AGREEMENT: This Purchase Order, as Buyer's offer to Seller, including all applicable terms, conditions and specifications, shall constitute the sole and exclusive agreement between the parties. This order supersedes all other writings and is expressly conditional upon Seller's agreement to the conditions hereof, and nothing shall be construed to be an acceptance of any terms of Seller.

. . . .

16. APPLICABLE LAW—DEFINITIONS: The definition of terms used, interpretation of this agreement and rights of all parties hereunder shall be construed under and governed by the laws of the State of New Jersey as first indicated in this agreement unless otherwise specified herein. . . .

Both purchase orders require the debtor to provide performance and payment bonds in the amount of the total price of each purchase order. On September 27, 1982, the debtor, as principal, and American, as surety, executed the requisite performance and payment bonds relative to the debtor's performance under each of the two purchase orders.[3] Each performance and payment bond, consisting of a two-page written document, contains the following material provisions:

THE CONDITION of the obligation is such that, whereas the Seller has entered

into a Purchase Order dated July 28/July 30, 1982 to perform the following work:

Job 10855—Public Service Electric and Gas Company Hope Creek Generating Station Bid Request [No. 361, No. 371]

NOW, THEREFORE, if the Seller shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of the Contract and any extensions thereof that may be granted by BECHTEL, and during the term of any warranty required under the Purchase Order and shall also well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of any and all modifications, additions, or alterations of the Purchase Order that may hereafter be made, and shall also fully indemnify and hold harmless the OWNER and BECHTEL from all cost and damage which it may suffer by reason of failure so to do and shall fully reimburse and repay the OWNER and BECHTEL all outlay and expense which the OWNER and BECHTEL may incur in making good any such default, then this obligation shall be void; otherwise, to remain in full force and effect.

None of the performance or payment bonds contain a choice of law provision; each is executed by the debtor and American, presumably in Knoxville, Tennessee.[4] Plaintiffs are not signatories to any bond; American is not a signatory to either of the two purchase orders.

The debtor did not complete performance on the purchase orders and American refused payment on the performance and payment bonds. The debtor filed its voluntary petition under Chapter 11 of title 11 of the United States Code on March 29, 1985. Plaintiffs thereafter commenced this proceeding seeking damages against American in Counts I and III for breach of contract.

3. The debtor and American executed an individual performance and payment bond respecting each of the two purchase orders.

4. The debtor, a Tennessee corporation, having its principal place of business at One Energy Center, Pellissippi Parkway, Knoxville, Tennessee, 37922, executed each bond as "Seller" through its secretary, R.D. Brenner; American, through its attorney-in-fact, Raymond A. Lawson, P.O. Box 1228, Knoxville, Tennessee 37901, executed each bond as "Corporate Surety." The only evidence indicating execution of the four bonds in Tennessee are the addresses of the debtor and American typed on each bond above the respective signatures of their corporate representatives. American is a New Jersey Corporation.

## II

American contends that General Condition No. 16 to the purchase orders, quoted in material part *supra*, designating New Jersey law as governing the rights of plaintiffs and the debtor, also governs its rights under the performance and payment bonds at issue. American reasons that as each purchase order expressly required the debtor to procure the performance and payment bonds requisite to its performance, and whereas its obligations under each bond were expressly conditioned on the debtor's performance of "all the undertakings, covenants, terms, conditions and agreements of the [purchase orders]," New Jersey law necessarily governs the interpretation and enforcement of the bonds. The court agrees.

Plaintiffs and defendant concur upon application of Tennessee choice of law principles to the issues raised in American's motion. Those principles are enunciated by the United States District Court for the Middle District of Tennessee as follows:

> Tennessee follows the general rule that the validity of a contract and the substantive rights of the parties to it are to be governed by the law which the parties intended. In the absence of a manifestation of contrary intention, the parties are presumed to have contracted pursuant to the laws of the state in which the contract was entered into. *Deaton v. Vise,* 186 Tenn. 364, 210 S.W.2d 665 (1948).

*Moody v. Kirkpatrick,* 234 F.Supp. 537, 540 (M.D.Tenn.1964). *See also Agricultural Serv. Ass'n, Inc. v. Ferry–Morse Seed Co., Inc.,* 551 F.2d 1057, 1063 (6th Cir.1977); *Boatland, Inc. v. Brunswick Corp.,* 558 F.2d 818, 821 (6th Cir.1977); *Hamilton Nat'l Bank of Chattanooga v. Hutcheson,* 357 F.Supp. 114, 117 (E.D. Tenn.1973), *aff'd without published opinion* at 492 F.2d 1243 (6th Cir.1974); *Moody v. Bass,* 357 F.2d 730, 732 (6th Cir.1966); *American Training Serv., Inc. v. Commerce Union Bank,* 415 F.Supp. 1101, 1104 n. 3 (M.D.Tenn.1976); and *Sloan v. Jones,* 192 Tenn. 400, 241 S.W.2d 506 (1951).

In a subsequent opinion out of the Middle District of Tennessee, the Court added:

> Indeed, *Moak v. Continental Casualty Co.,* 4 Tenn.App. 287, 292 (1927) states, "The *lex loci contractus* becomes as much a part of the contract as if specifically incorporated therein, and, in the absence of evidence of contrary intention, the parties must be held to have contemplated the application of that law to the terms of their agreement."

*Koehler v. Cummings,* 380 F.Supp. 1294, 1303 (M.D.Tenn.1974).

More recently Judge Wiseman synopsized the Tennessee choice of law rule relative to contracts in the following terms:

> The Tennessee approach to the choice of law applicable to contracts, however, dictates not a strict *lex loci contractus* approach but rather an inquiry into the intention of the parties. Thus, rights and obligations of parties to a contract "are governed by the law of that state with the view to which it is made." The parties' intentions in this respect are "to be gathered from the terms of the instruments and all of the attending circumstances." *Ohio Casualty Insurance Co. v. Travelers Indemnity Co.,* 493 S.W.2d 465, 467 (Tenn.1973) (quoting *First American National Bank v. Automobile Insurance Co.,* 252 F.2d 62, 64 (6th Cir.1958)).

*Mackey v. Judy's Foods, Inc.,* 654 F.Supp. 1465, 1470 (M.D.Tenn.1987) (footnote omitted).

Footnote nine to Judge Wiseman's opinion in *Mackey* is noteworthy:

> Tennessee courts have said that a contract is "presumed to be made with reference to the law of the place where it was entered into." *Deaton v. Vise,* 186 Tenn. 364, 210 S.W.2d 665, 668 (1948); *see also Boatland, Inc. v. Brunswick Corp.,* 558 F.2d 818, 821 (6th Cir.1977). This presumption, however, always is subject to qualification by a contrary intention of the parties. *See Deaton v. Vise, supra,* 210 S.W.2d at 668. That intention may be manifest by the terms of the contract or other attending circumstances. *Ohio Casualty Insurance Co. v. Travelers In-*

*demnity Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). The presumption of *lex loci contractus*, thus, is not an inflexible rule but rather itself an inference regarding the intent of the parties that governs in the absence of evidence to the contrary. *Id.* at 1470.

In the present case, the performance and payment bonds were integral parts of both purchase orders which plaintiffs contracted would be governed by New Jersey law. The goods and services provided by the debtor under each purchase order were to be delivered or provided to plaintiffs at Hope Creek in New Jersey. Shipping terms were "F.O.B. Carrier Jobsite" and, pursuant to General Condition No. 5, "all Goods furnished by [Debtor] ... [became] property of [PSE & G/Bechtel] upon payment therefor or upon delivery, whichever occur[red] earlier."

The State of Tennessee is not mentioned in any of the four bonds. While the court assumes execution of these bonds in Tennessee on the strength of the addresses for the debtor and American listed on page two of each bond, it must also, under Tennessee law, look to attendant circumstances to determine the intention of the parties.

*Restatement (Second) Conflict of Laws,* § 194 (1971) provides:

Contracts of Suretyship

The validity of a contract of suretyship and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the law governing the principal obligation which the contract of suretyship was intended to secure, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local laws of the other state will be applied.

The "Comment" to the above section provides in material part:

**a. Scope of section and meaning of terms.** The rule of this Section applies to all contracts in which one person, "the surety," promises a second person, "the creditor," to perform the obligation, or to

answer for the default, of a third person, "the debtor."

. . . .

**b. Rationale.**

. . . .

In the absence of an effective choice of law by the parties, the validity of the suretyship contract and the rights created thereby will usually be determined by the law which governs the principal obligation. In the nature of things, the two contracts will usually be closely related and have many common elements. Particularly when the two contracts are contained in the same instrument or when both were made at around the same time, application of ordinary choice-of-law rules ... will frequently lead to a decision that both contracts are governed by the same law. Such a conclusion is likewise dictated by considerations of practicality and convenience. In addition, the contract of suretyship can often be considered accessory, or subsidiary, to the principle obligation.

*Restatement (Second) Conflict of Laws,* § 194 comment a & b (1971).

The Tennessee courts have neither adopted nor rejected § 194 to the *Restatement (Second) Conflict of Laws.* The logic supporting § 194 is sound and this court is persuaded that its application to the facts of the case *sub judice* is not inconsistent with or in derogation of the Tennessee choice of law principles enunciated by the District Court in *Moody, Koehler,* and *Mackey, supra.* By their terms purchase orders No. 361 and 371 required execution by the debtor of the performance and payment bonds at issue, and American's obligations under those bonds are expressly conditioned upon the debtor's performance under each purchase order. Clearly, the purchase orders and bonds are closely related, with the bonds being an integral part of each purchase order. PSE & G/Bechtel chose New Jersey law to govern the interpretation and rights of the parties under its two purchase orders; hence, it logically follows that New Jersey law should also

govern its claims against American under the performance and payment bonds mandated by those purchase orders.

The court finds from the terms of the performance and payment bonds, and all of the attending circumstances accompanying their execution, that the bonds were made with reference to the substantive laws of the State of New Jersey. Therefore, Tenn. Code Ann. § 56–7–105(a) (Supp.1987) has no application. The court need not consider the alternative aspect of American's motion.

American's motion for partial summary judgment will be granted. An appropriate Judgment will enter dismissing Counts II and IV of plaintiffs' Complaint filed July 20, 1987.