IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2017 Session

## MARGARET WINEBRENNER v. JOHNNIE MACKALYN GODWIN ET AL.

Appeal from the Chancery Court for Maury County
No. 15-486    Stella L. Hargrove, Judge

_____

No. M2017-00270-COA-R3-CV

_____

This appeal illustrates the, not uncommon,[1] choice of law problems that can arise when an unmarried couple begins cohabitation in one state and then moves to another state and one of the cohabitants dies.  After meeting and living together in California, the cohabitants moved to Tennessee, where they lived together for a number of additional years.  When one of the cohabitants died, the other sought a declaratory judgment against the decedent's children and the trustee of a trust created by the decedent that, among other things, the cohabitants' relationship entitled the surviving cohabitant to support in the form of "palimony" as allowed by California law.  The children and the trustee moved for summary judgment, which was granted.  On appeal, the surviving cohabitant argues that the trial court erred in not applying California law to an agreement for support that was made in California.  We conclude that, under our choice of law rules, Tennessee law applies.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which RICHARD H. DINKINS and THOMAS R. FRIERSON, JJ., joined.

T. Jake Wolaver and Adrienne L. Dale, Columbia, Tennessee, for the appellant, Margaret Winebrenner.

Christopher J. Skinner and Robin J. Gordon, Nashville, Tennessee, for the appellees, Johnnie Mackalyn Godwin and Jody Malinda Peppers.

---

[1] *See* William A. Reppy, Jr., *Choice of Law Problems Arising When Unmarried Cohabitants Change Domicile*, 55 SMU L. REV. 273 (2002).

# OPINION

## I.

### A.

On June 11, 2015, Johnny Mack Galbreath died in Lewis County, Tennessee. Some fifteen years prior, while living in California, Mr. Galbreath executed a will and created the Trust of Johnny Mack Galbreath. The will left his entire estate to the trustee of the trust.

In 2005, Mr. Galbreath executed a "Second Amended and Complete Restatement of Declaration of Trust of Johnny Mack Galbreath." The declaration provided for Mr. Galbreath's two daughters, Johnnie Mackalyn Godwin and Jodi Livingston. Additionally, the declaration stated Mr. Galbreath's intention to marry Margaret Winebrenner and made provision for her in the event of Mr. Galbreath's death. The arrangements included a life estate in their Tennessee residence and the creation of a separate trust. Specifically, the declaration provided as follows:

1. If [Mr. Galbreath] is married to and living with MARGARET WINEBRENNER at the date of his death, then the house in which [Mr. Galbreath] resides at the date of his death, plus the sum of $350,000.00, shall constitute the principal of a separate trust for the benefit of MARGARET WINEBRENNER, to be held, managed, administered and distributed as follows:

    a. MARGARET WINEBRENNER shall have the use and occupancy of the real property owned and used by [Mr. Galbreath] at the time of [Mr. Galbreath's] death for residential purposes, free of rent. The right of MARGARET WINEBRENNER to the use and occupancy of such real property shall be during her lifetime; provided, however that such right shall terminate if MARGARET WINEBRENNER remarries or desires to no longer live on such property. Further, the right of MARGARET WINEBRENNER to the use and occupancy of such real property shall be personal to MARGARET WINEBRENNER and no other person shall have such right to the use and occupancy of such real property; provided however, that JOHNNIE MACKALYN GODWIN and her family shall also have the right to the use and occupancy of such real property.

    b. The Trustee shall pay all mortgage payments, insurance, property taxes, assessments and utilities. Additionally, the Trustee shall expend such sums as shall be necessary to maintain such real property.

2

c.	Upon the death or remarriage of MARGARET WINEBRENNER, or if she no longer desires to reside on such property, or if her right to the use and occupancy of the property is terminated herein, then the trust provided for in this subparagraph 1 shall terminate and the property and other trust assets shall be distributed pursuant to the terms of subparagraph 2 below.[2]

d.	If [Mr. Galbreath] and MARGARET WINEBRENNER are divorced or separated at the date of [Mr. Galbreath's] death, then the provisions of this paragraph shall be null and void.

Mr. Galbreath's and Ms. Winebrenner's relationship preceded the amended and restated declaration of trust by many years. They became engaged in the 1990s but later separated. The duration of the couple's separation is a matter of dispute, but all agree that, by the 2000s, the couple had reunited.

Beginning in 2004, Ms. Winebrenner moved into Mr. Galbreath's Fresno, California home. According to Ms. Winebrenner, they lived together in the home. But according to Mr. Galbreath's family, Mr. Galbreath only stayed in the home when he returned to California; by that point, they claimed Mr. Galbreath had moved to Maury County, Tennessee, to live on a large tract of land he had purchased. Again according to Ms. Winebrenner, in March 2005, Mr. Galbreath promised that he would marry her and provide for her financially if Ms. Winebrenner gave up her career, retired early, and moved to Tennessee to live with him.

A March 2005 letter supported Ms. Winebrenner's claim. In the letter, Ms. Winebrenner informed her California employer that she was resigning. The letter stated, "I am soon to be married, and my fiancé and I are in the process of building a new home in Tennessee!" Shortly thereafter, Ms. Winebrenner moved into a trailer with Mr. Galbreath on his Tennessee property. In October of that year, Mr. Galbreath executed the amended and restated declaration of trust referencing the parties' intended marriage.

Although they continued to live together, first in the trailer and later in a home built on the property, Mr. Galbreath and Ms. Winebrenner never married. Mr. Galbreath's family claims the wedding was cancelled before Ms. Winebrenner relocated to Tennessee, while Ms. Winebrenner claims "Mr. Galbreath decided to postpone the wedding shortly after" her move. In either event, despite not being married, until his death, Mr. Galbreath provided for the financial needs of Ms. Winebrenner, and Ms. Winebrenner performed homemaking duties.

---

[2] Subparagraph 2 specified distributions to be made to one of Mr. Galbreath's daughters.

B.

Following Mr. Galbreath's death, in the Chancery Court for Maury County, Ms. Winebrenner filed suit against Mr. Galbreath's two daughters and the trustee of the trust (collectively, "Defendants") seeking a declaratory judgment. Ms. Winebrenner sought a declaration that the trust "create[d] a life estate in the residence for the benefit of [Ms. Winebrenner], and that [Ms. Winebrenner] [wa]s entitled to the monetary gift set forth in the Trust." Alternatively or additionally, Ms. Winebrenner sought a declaratory judgment that "her relationship with Mr. Galbreath constitute[d] a partnership and/or joint venture under the laws of California and Tennessee, and that she [wa]s entitled to an accounting of all partnership property and an equitable property division." Finally, Ms. Winebrenner sought a declaratory judgment that "her relationship with Mr. Galbreath, which began in the State of California and ultimately relocated to the State of Tennessee, entitle[d] her to support in the form of 'palimony', as allowed under the common law of the State of California."

Defendants moved for summary judgment. Defendants argued that, because Mr. Galbreath and Ms. Winebrenner never married, a condition precedent to Ms. Winebrenner's rights under the trust was never satisfied. According to Defendants, Ms. Winebrenner's partnership/joint venture theory failed because the concept of implied partnership or joint venture did not extend beyond business relationships. Lastly, Defendants argued that the palimony claim failed because Mr. Galbreath made no agreement, written or parol, to support Ms. Winebrenner for the rest of her life.

The chancery court granted summary judgment in favor of Defendants. Applying California law because the trust "was created and executed in the State of California," the court determined that the trust imposes the conditions of both marriage and cohabitation on the life estate in the residence and the creation of the separate trust. Because it was undisputed that the parties did not marry, the court concluded that Ms. Winebrenner could not recover under the trust. The court also agreed that an implied partnership or joint venture required a business relationship under either Tennessee or California law and that there was no evidence of a business undertaking between Mr. Galbreath and Ms. Winebrenner.

As for the palimony claim, the court stated that "Tennessee does not recognize support known as palimony." Then after citing the seminal California case on nonmarital or "cohabitation" agreements, *Marvin v. Marvin*, 557 P.2d 106 (Cal. 1976), the court concluded that "the relationship between [Ms. Winebrenner] and Mr. Galbreath which began in California and ended in Tennessee [does not] entitle[] her to support recognized as palimony in the State of California."

4

## II.

In this appeal, Ms. Winebrenner raises two issues. First, she argues that the chancery court erred in "failing to apply California law to find an enforceable agreement for future support." Second, she argues that the chancery court "erred in disregarding the disputed genuine issues of material facts that demonstrate an enforceable agreement for support under California law."

### A.

Ms. Winebrenner's claim sounds in contract. As she notes, "[i]t is a familiar rule in Tennessee that the construction and validity of a contract are governed by the law of the place where the contract is made."[3] *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973). California law governs, Ms. Winebrenner asserts, because her relationship with Mr. Galbreath began in California, they resided together in California, they were engaged in California, and the "promise for support arose in California." Apparently conceding all these facts, the Defendants respond that the chancery "court applied California law although not in [Ms. Winebrenner's] favor."

The problem with Ms. Winebrenner's argument is that she does not provide a complete statement of the choice of law rule. Our courts "look[] to the intention of the parties in determining their contractual rights and obligations." *Deaton v. Vise*, 210 S.W.2d 665, 668 (Tenn. 1948). While it is true that negotiating and entering into a contract in a particular place might indicate an intention on the part of the parties for the law of that place to govern, a contrary intention can be shown. *Id.* Thus, we only "presume[] [a contract is] made with reference to the law of the place where it was entered." *Id.* The presumption can be overcome if "it [clearly] appears that [the contract] was entered into in good faith with reference to the law of some other state." *Id.*; *In re Estate of Davis*, 184 S.W.3d 231, 234-35 (Tenn. Ct. App. 2004).

The intention of the parties is gathered from the facts and circumstances attending the contract. *Deaton*, 210 S.W.2d at 669. One of the attending facts and circumstances is the place of performance of the contract. *See Edgington v. Edgington*, 162 S.W.2d 1082, 1086 (Tenn. 1942) (recognizing that the law of the place of performance may govern); *Solomon v. FloWarr Mgmt., Inc.*, 777 S.W.2d 701, 705 n.5 (Tenn. Ct. App. 1989) (same). Where parties agree to performance of the contract in a foreign state and performance in the foreign state benefits or is desired by one of the contracting parties, absent fraud, the law of the foreign state will govern the transaction. *See Deaton*, 210 S.W.2d at 669.

---

[3] The choice of law rule is often dubbed *lex loci contractus*. *See, e.g.*, *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973) ("[W]e are of the opinion that the conflicts rule of Lex loci contractus applies . . . .").

Here, we conclude that Tennessee law governs Ms. Winebrenner's claim for support. As we must, we take as true Ms. Winebrenner's assertion that Mr. Galbreath agreed to support her for the remainder of her life. We further accept that Mr. Galbreath made the promise while both parties cohabitated in California. Yet, undisputedly Ms. Winebrenner was to receive the promised support in Tennessee. According to Ms. Winebrenner, Mr. Galbreath "promised to provide for her financially if she gave up her career, retired early, and moved to Tennessee to live him." And without question Mr. Galbreath desired performance of his obligation in Tennessee because he had already "purchased a large tract of land in Hampshire" and planned to move here. The claimed contract for support was entered into with reference to the law of Tennessee.

B.

Ms. Winebrenner's second issue on appeal is premised on the application of California law. She argues that the court "erred by failing to consider the disputed genuine issues of material facts that, when taken in the light most favorable to the nonmoving party, demonstrate an enforceable agreement for support *under California law*." (emphasis added) Significantly, she does not challenge the chancery court's determination that the agreement for support would be unenforceable under Tennessee law.[4] So we consider that issue waived. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."); *Hodge v. Craig*, 382 S.W.3d 325, 333-34 (Tenn. 2012) ("The scope of our review . . . depends, in large part, on the issues that the parties have presented to this Court.").

Because we conclude that Tennessee and not California law applied, we need not reach Ms. Winebrenner's second issue. We offer no opinion regarding whether the chancery court properly held that the alleged agreement by Mr. Galbreath to provide support for Ms. Winebrenner would be unenforceable under California law.

---

[4] In her statement of issues, Ms. Winebrenner frames the issue without reference to California law, stating the trial court erred "[i]n disregarding the material facts which remain in dispute and render summary judgment inappropriate." But in her argument, she discusses the disputed factual issues in the context of California law and only cites to a California case, *Byrne v. Laura*, 60 Cal. Rptr. 2d 908 (Cal. Ct. App. 1997). To be properly raised on appeal, an issue must be presented in the manner prescribed by Tennessee Rule of Appellate Procedure 27, which requires the appellant to give, not only her contentions, but also citations to applicable authority. *Hodge v. Craig*, 382 S.W.3d 325, 333-34 (Tenn. 2012); Tenn. R. App. P. 27(a)(7)(A).

6

## III.

For the foregoing reasons, we affirm the grant of summary judgment. And we remand the case for such further proceedings as may be necessary and consistent with this opinion.

_____
W. NEAL McBRAYER, JUDGE