In re TECHNOLOGY FOR ENERGY
CORPORATION, Debtor.

PUBLIC SERVICE ELECTRIC AND
GAS COMPANY, and Bechtel Construction, Inc., As Agent for Public Service Electric and Gas Company, Plaintiffs,

v.

The AMERICAN INSURANCE
COMPANY, Defendant.

Bankruptcy No. 3–85–00455.
Adv. No. 3–88–0006.

United States Bankruptcy Court,
E.D. Tennessee.

Aug. 30, 1988.

Hunton & Williams, John A. Lucas, Jeffrey S. Norwood, G. Mark Mamantov, Knoxville, Tenn., for plaintiffs.

Baker, Worthington, Crossley, Stansberry & Woolf, Richard T. Sowell, Nicholas A. Della Volpe, Knoxville, Tenn., for defendant.

Gullett, Sanford, Robinson & Martin, G. Rhea Bucy, A. Scott Derrick, Nashville, Tenn., for debtor.

MEMORANDUM ON PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT

RICHARD S. STAIR, Jr., Bankruptcy
Judge.

Plaintiffs filed a "Motion For Partial
Summary Judgment" on June 28, 1988,
seeking a judgment striking the fifth, seventh, eighth, and ninth affirmative defenses relied upon by defendant in its answer.[1]
Defendant filed its response in opposition
to plaintiffs' motion on July 26, 1988.
Plaintiffs did not file supporting affidavits
with their motion nor did defendant, with
its response, file affidavits or other evidentiary material supporting its opposition.
The court heard oral argument on August
2, 1988.

This is a noncore proceeding. 28 U.S.C.
A. § 157(c)(1) (West Supp.1988). The parties have consented to the entry of appropriate orders and judgments by the bankruptcy judge. 28 U.S.C.A. § 157(c)(2)
(West Supp.1988).

I

Plaintiff, Public Service Electric and Gas
Company (PSE & G), owns and operates
the Hope Creek Generating Station (Hope
Creek), a nuclear-powered electric generating plant in New Jersey. The co-plaintiff,
Bechtel Construction, Inc. (Bechtel), assignee of Bechtel Power Corporation, was retained by PSE & G as its agent to oversee
construction of the Hope Creek project.
During construction plaintiffs were required to install a radiological monitoring
system (RMS) designed, in part, to detect,
monitor and report radiation levels. On
July 30, 1982, plaintiffs entered into two
purchase orders with the debtor, No.
10855–J–361–AC and No. 10855–J–371(Q)–
AC in the amounts of $3,067,962 and $805,-
709, respectively, to produce the RMS for
installation at Hope Creek. Both purchase
orders require the debtor to provide performance and payment bonds in the
amount of the total price of each purchase
order.

On September 27, 1982, the debtor, as
principal, and defendant, as surety, executed the requisite performance and payment bonds relative to the debtor's obligations under the two purchase orders.[2]
Each performance and payment bond, consisting of a two-page written document,
contains the following identical provision
relevant to changes in the scope of work
(Changes Clause) under the purchase orders:

> The Surety and Seller further agree that
> any modifications, additions or alterations which may be made in the terms of
> the Purchase Order or in the work to be
> done thereunder, or any extensions of
> the Purchase Order or other forebearance on the part of either the OWNER or
> Seller to the other, shall not in any way
> release the Seller and the Surety, or either of them, their heirs, assigns, executors, administrators and successors, from
> their liability hereunder, notice to Surety
> of any such modifications, additions, extensions or forebearance being hereby
> expressly waived.

The debtor did not complete performance
under the purchase orders and defendant,
upon demand, refused payment of its obligations under the performance and payment bonds. The debtor filed its voluntary
petition under Chapter 11 of title 11 of the
United States Code on March 29, 1985.
Plaintiffs, on July 20, 1987, filed their four-count complaint in the United States District Court for the Eastern District of Tennessee seeking damages from defendant at
Counts I and III for breach of contract, and
seeking at Counts II and IV a determination of liability for bad faith pursuant to
Tenn.Code Ann. § 56–7–105(a) (Supp.1987).[3]

---

**1.** Defendant's original answer, filed August 26,
1987, was amended August 2, 1988, in response
to plaintiffs' "First Amended Complaint" filed
July 18, 1988. Its fifth, seventh, eighth, and
ninth defenses are perpetuated in its amended
answer.

**2.** The debtor and defendant executed individual
performance and payment bonds relative to
each purchase order.

**3.** On June 21, 1988, this court, having determined that Tenn.Code Ann. § 56–7–105(a)
(Supp.1987) had no application, granted defendant's motion for partial summary judgment

On October 27, 1987, the District Court determined this proceeding to be related to a case under title 11 and referred the case to the bankruptcy court for disposition pursuant to 28 U.S.C.A. § 157(c)(1) and (2) (West Supp.1988).

In their "First Amended Complaint" filed July 18, 1988, plaintiffs reassert at Counts I and II their entitlement to damages for breach of contract. Counts II and IV of their original complaint are not restated but are replaced by Count III, which asserts a claim for damages premised upon a "tort of bad faith," and Count IV, which asserts a claim for damages for "breach of implied covenant of good faith." Under Count I plaintiffs seek damages in the amount of $10,742,805 for breach of the performance bonds; under Count II they seek damages in the amount of $100,806.27 for breach of the payment bonds; under Counts III and IV they seek damages in the amount of $10,843,611.27; and they further seek an award for punitive damages in the amount of $10,000,000.

In its answer defendant, contending its obligations under the bonds have been discharged by plaintiffs' actions, relies upon the following affirmative defenses:

### FIFTH DEFENSE

The Purchase Orders executed by BPC [4] and TEC [5] contemplated a future agreement as to the Software Functional Design Specification (SFDS), which the parties left open and intended to agree upon within a reasonable time after execution of the Purchase Orders. TEC submitted a proposed SFDS to BPC but BPC failed ·to approve it, and instead initiated a continuing stream of design changes which so altered the scope of the agreement contemplated by the Purchase Orders as to constitute an entirely different agreement than the one which American agreed to bond, and thereby discharged American as surety.

### SEVENTH DEFENSE

American has been discharged from any obligation under the bonds, because plaintiffs had so materially increased and altered the scope, terms, and performance of the Purchase Orders that the revised performance required of TEC, as principal, was far beyond the contemplation of the parties to the Bonds and materially increased the risk that was assumed by the defendant surety in September 1982.

### EIGHTH DEFENSE

Plaintiffs are barred from recovering under the Bonds because they have materially breached the requirements of the Purchase Orders by their continued and wrongful changes to the scope or function of the design, by their failure to promptly review and approve the Software Functional Design Specifications, by their failure to approve or recommend approval of price adjustments to which TEC was entitled, by their interference with and hindrance of TEC's efforts to perform the work, and by their other wrongful acts towards TEC.

### NINTH DEFENSE

American is not liable to plaintiffs under the Bonds, because plaintiffs and the principal TEC abandoned the original Purchase Orders and created a new contract or novation, and that American at no time consented to, was compensated for, or otherwise agreed to be surety on such said new contract.

### II

By their "Motion For Partial Summary Judgment," plaintiffs contend the Changes Clause in the performance and payment bonds executed by defendant as surety anticipated modifications and changes in the design and scope of work encompassed within the purchase orders; that defendant's consent to any modification and

filed March 25, 1988, thereby dismissing Counts II and IV of the complaint. 88 B.R. 182.

4. Bechtel Power Corporation.

5. Technology For Energy Corporation.

change was not required; that defendant expressly waived notice of any modification or change; and that defendant's liability under the bonds is not affected by any modification and change. Thus, plaintiffs argue that defendant's affirmative defenses purporting to place at issue the scope and materiality of design changes, modifications, and/or alterations to the purchase orders must be stricken as a matter of law.

Defendant contends the four defenses at issue are "premised on the existence of changes in scope and dollar magnitude of the purchase orders, and departures from the original radiation monitoring system design, which are so great as to be *beyond the contemplation of the parties.*" *American's Response To Plaintiffs' Motion For Partial Summary Judgment,* p. 2 (emphasis in original).

Additionally, plaintiffs contend that if they do not prevail on their legal theory, they are nonetheless entitled to a summary judgment striking defendant's fifth, seventh, eighth, and ninth defenses. Plaintiffs argue that defendant has failed to establish the existence of a genuine issue of material fact relative to the four defenses at issue as required by Fed.R.Civ.P. 56(c), incorporated into Fed.R.Bankr.P. 7056.

### III

■ Summary judgment under Rule 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This court is not prepared to hold, as a matter of law, that the Changes Clause in the performance and payment bonds executed by defendant is broad enough to encompass any change or modification to the purchase orders executed by Bechtel and the debtor, without regard to whether those changes or modifications constitute a material or radical departure from the original work contemplated by the parties.

Plaintiffs are not entitled to a summary judgment premised exclusively upon the language of the Changes Clause. In a case involving a provision in a surety bond similar to the provision confronting the court in the instant proceeding, the 8th Circuit noted in material part:

By the express terms of the bond in suit, no alterations in the terms of the construction contract, no alterations in the work to be done under it, no extension of time for the performance of the contract, and no other forbearance on the part of either party to the other, are to release the principal or the surety. This, we think, is clear import of the language used.

The question then is not whether the contractor under the terms of the contract could have been compelled to perform the work as altered by the new drawings, but whether the principal and the surety upon the bond were released by reason of the changes in the contract and in the work which were agreed to by the contractor and the plaintiff. If this were a bond conditioned merely for the faithful performance of a contract, and making no mention of alterations, an entirely different question would be presented.

It is well settled law that, even though a construction contract provides that alterations may be made during the progress of the work, radical or revolutionary changes—changes not fairly within the contemplation of the parties at the time the contract was made—changes constituting a material departure from the original undertaking—do not come within its terms and will therefore release a nonconsenting surety upon the usual performance bond.

It is also well settled that material changes not so extensive as to constitute a departure from the original contract—changes which are fairly within the scope of the original undertaking—changes which may reasonably be said to have been originally contemplated by the parties as permissible alterations—are covered by a construction contract permitting alterations, and the making of such

changes does not release the surety on the ordinary performance bond.

*Massachusetts Bonding & Ins. Co. v. John R. Thompson Co.,* 88 F.2d 825, 829 (8th Cir.1937) (citations omitted), *cert. denied,* 301 U.S. 707, 57 S.Ct. 941, 81 L.Ed. 1361 (1937).

It seems patently clear from the pleadings that there were substantial changes and modifications to the purchase orders. Defendant's total liability under the two performance bonds at their execution was limited to $3,873,671; plaintiffs seek through the instant proceeding to recover $10,742,805 on the performance bonds, a sum almost triple defendant's original obligation, and $100,806.27 on the payment bonds. The extent, affect, and significance of these changes will be established at trial.

## IV

■ Additionally, plaintiffs, relying upon the recent Supreme Court case of *Celotex Corp. v. Catrett,*[6] contend that defendant has offered none of the evidentiary materials identified in Rule 56(c) except its answer in support of its opposition to their motion. They therefore assert their "Motion For Partial Summary Judgment" should be granted as defendant has not established a genuine issue as to a material fact relative to the four defenses at issue.

In *Celotex* a defendant in an asbestos products liability suit moved for summary judgment more than one year after the filing of the complaint. It argued that no evidence connected the decedent with its asbestos, and, in particular, that the plaintiff in her answers to interrogatories failed to identify any witnesses who could testify about the decedent's exposure to its asbestos products.[7] The District Court granted summary judgment but was reversed by the Court of Appeals, which held that Rule

56 imposed upon the movant a "burden of coming forward with proof of the absence of any genuine issues of material fact."[8] The Court of Appeals determined that since the defendant had offered no evidence in support of its motion, summary judgment must be denied.[9] The Supreme Court reversed, holding that in an appropriate case a moving party not bearing the ultimate burden of proof may rely on the record to show the absence of a genuine dispute relative to a material fact.[10] More particularly, in addressing the burden of the moving party under Rule 56, Justice Rehnquist, speaking for a majority of the Court, stated:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 106 S.Ct. at 2553. Once the moving party meets this responsibility, the Court determined that Rule 56(e) requires the nonmoving party to go beyond the pleadings and to produce evidentiary material in the form identified at Rule 56(c) sufficient to designate specific facts showing that there is a genuine issue for trial.[11]

In a concurring opinion, Justice White, further enunciating the duties of the moving party, noted:

> [T]he movant must discharge the burden the rules place upon him: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.

**6.** 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**7.** *See Celotex,* 106 S.Ct. at 2551.

**8.** *Catrett v. Johns–Manville Sales Corp.,* 756 F.2d 181, 184 (D.C.Cir.1985) (footnote omitted).

**9.** The court did not evaluate plaintiff's evidence in opposition to the motion for summary judgment filed against it by defendant.

**10.** *Celotex,* 106 S.Ct. at 2553–54.

**11.** *Id.* at 2553.

... It is the defendant's task to negate, if he can, the claimed basis for the suit.[12]

*Id.* at 2555.

It appears to this court that *Celotex* stands, in part, for the proposition that the movant's burden under Rule 56 is satisfied only upon the showing of an absence of evidence to support an essential element of the nonmoving party's case. The majority in *Celotex* held that once the moving party satisfies its initial burden of explaining the basis of its motion to the court and pointing out portions of the record indicating the lack of a genuine issue of material fact, it is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 106 S.Ct. at 2553 (emphasis in original).

Plaintiffs have not met their initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which [they] believe[ ] demonstrate the absence of a genuine issue of material fact." [13] In fact, plaintiffs, in a "Memorandum In Support Of Motion For Partial Summary Judgment" filed contemporaneously with their motion, make no reference to any lack of evidence to support defendant's fifth, seventh, eighth, and ninth defenses. They ground their motion exclusively on the legal sufficiency of these four defenses when considered within the context of the Changes Clause.[14]

Fed.R.Civ.P. 56(e) provides in material part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as oth-

erwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Plaintiffs have not supported their "Motion For Partial Summary Judgment" as required by Rule 56(e). Having failed to discharge the burden placed upon them by Rule 56, plaintiffs have failed to establish lack of a genuine issue as to a material fact.

For the reasons stated herein, plaintiffs' "Motion For Partial Summary Judgment" will be denied.

---

12. In the case sub judice, this phrase would more appropriately be worded: "It is the plaintiffs' task to negate, if they can, the affirmative defenses relied upon by defendant."

13. *Celotex*, 106 S.Ct. at 2553.

14. As was pointed out in a supplemental memorandum filed by defendant after oral argument, its answer to plaintiffs' first set of interrogatories filed October 9, 1987, identifies numerous documents in support of its fifth, seventh, eighth, and ninth defenses, as well as names and addresses of witnesses it relied upon in making a determination that it had been discharged from its obligations under the performance and payment bonds at issue.