IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 6, 2024 Session

FILED
08/29/2024
Clerk of the
Appellate Courts

# STEPHEN H. BILLS ET AL. v. JOE B. BARTON ET AL.

**Appeal from the Chancery Court for Bedford County**
**No. 33861    J. B. Cox, Chancellor**

_____

**No. M2023-00379-COA-R3-CV**

_____

Litigation arose in connection with a dispute over an option agreement to purchase property. The parties agreed to settle the case and to allow a Tennessee-licensed real estate appraiser to set the purchase price. The purchasers, however, moved to set aside the price set by the appraiser. Relying on the opinions of a licensed real estate broker and a different licensed appraiser, the purchasers argued that the appraiser's valuation deviated from the required professional standards to such an extent that it fell below the relevant standard of care. The trial court denied the motion, concluding: (1) the purchasers could not under the settlement agreement challenge the appraisal; (2) even if they could, the real estate broker's lack of an appraisal license rendered him per se incompetent to testify; and (3) the purchasers failed to provide a declaration from their expert licensed real estate appraiser stating that the appraisal had not been conducted in accordance with professional standards. In response to a motion to alter or amend, the trial court judge recognized that the purchasers had, in fact, provided such a declaration, but, nevertheless, denied their motion. The purchasers appeal. We conclude that the purchasers can challenge the appraiser's evaluation on the limited basis that he allegedly departed from the professional standard of care. We also conclude the Tennessee licensed real estate broker not holding a Tennessee real estate appraiser's license does not per se render his testimony incompetent. We also conclude that even assuming the testimony from the real estate broker is inadmissible, the purchasers have presented evidence that the appraisal was not conducted in accordance with professional standards. Accordingly, we remand this case to the trial court for the trial court to reassess the admissibility of the real estate broker's testimony and to determine whether the appraiser violated the professional standard of care.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part; Vacated in Part; Case Remanded**

JEFFREY USMAN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Anthony C. Bills, Nashville, Tennessee; John T. Bobo, Shelbyville, Tennessee; and William C. Rieder, Tullahoma, Tennessee, for the appellants, Stephen H. Bills and Margaret P. Bills.

Donald K. Vowell, Knoxville, Tennessee; and Ralph McBride, Jr., Shelbyville, Tennessee, for the appellees, Joe B. Barton, and Nancy J. Barton.

**OPINION**

I.

In 2012, Joe and Nancy Barton sold some of the land they owned in Bedford County, Tennessee to Stephen and Margaret Bills. The Bartons also granted the Billses options to purchase more land, including a seventy-one-acre tract adjacent to Red Hill Road (the property), at any point "during the [Bartons'] lifetimes." When the Billses acted upon their option as to this property in 2021, however, they allegedly "discovered that the [Bartons had already] . . . sold certain portions of the real property" to another family. Litigation arose over these actions and included disputes among the parties about valuation.

The parties settled the case through mediation on or about July 29, 2022. The parties' three-page, handwritten "settlement agreement" states in relevant part:

> The parties agree by their signature below that they will submit 3 appraiser names to the Court within 30 days from today. The Court shall select an appraiser based upon their credentials in appraising agricultural lands. The appraiser may speak to the parties but the attorneys agree to not try [to] influence the outcome.
>
> The parties also agree that the appraiser must have a Tennessee license (Appraisal). The Appraiser selected cannot have been used to appraise the land previously.
>
> Once selected, the appraiser shall have 60 days to conduct the appraisal and the parties agree to be bound to the price as appraised to be used as the purchase [price] on the 71 acre Tract.

Adhering to that language, each side submitted the names of three licensed appraisers to the court. On September 23, 2022, the trial court chose Mr. Joe D. Smith, one of the individuals recommended by the Billses, to appraise the property.

Mr. Smith promptly completed his appraisal by September 30, 2022. In his report, Mr. Smith noted that he acted "in accordance with the requirements of the Appraisal Report

- 2 -

option of [the Uniform Standards of Professional Appraisal Practice (the USPAP)] Standards Rule 2-2(a)." Mr. Smith utilized the sales comparison approach, wherein an appraiser arrives at an opinion of value by comparing a subject tract to others that sold on the open market around the time of the appraisal to calculate the subject tract's "highest and best use" value, as he believed it was the "only reliable approach" under the circumstances. After acknowledging that "there were very few land sales of comparable location to the [property]," Mr. Smith identified four tracts that had sold within two years on the open market and used details from those sales to generate a $10,000 price-per-acre estimate. Mr. Smith multiplied this benchmark by the total acreage of the property to arrive at a final appraisal price of $710,000.

On November 8, 2022, the Billses filed a motion asking the trial court to set aside Mr. Smith's appraisal. The Billses asserted that Mr. Smith failed to comply with the USPAP by choosing comparable tracts that did not account for critical features on the property, for example using comparators that did not have similar floodplain deficiencies to the property being appraised, that would affect the overall valuation. They argued that anyone following the professional standards under the USPAP would not have chosen the same comparables Mr. Smith used to arrive at his opinion of value. The Billses contended that such deficient appraisal deprived them of the benefit of the bargain they struck in the settlement agreement, *i.e.*, having the purchase price for the property be set by someone acting according to the standard of care required of licensed real estate appraisers in Tennessee.

The Billses retained a licensed appraiser, Mr. Shannon Michael Spillman, "to review the [Smith] Appraisal and provide his opinion on whether [it] . . . conforms to the recognized standards of professional practice." Mr. Spillman had not completed his report when the Billses filed their motion, so they indicated that they would later supplement their filings with Mr. Spillman's findings.

In the meantime, the Billses attached a declaration from a real estate broker, Mr. Harold Segroves, to support their arguments related to the standard of care. Mr. Segroves is the owner and principal of Coldwell Banker Segroves-Neese Real Estate. He had worked as a licensed real estate broker in Bedford County since 1977. The parties agree that Mr. Segroves did not hold a Tennessee real estate appraiser's license at the time he wrote his declaration. The record does not address whether he previously held such a license.

Mr. Segroves wrote in his declaration that

> [d]uring the course of my real estate business, I have performed hundreds of real estate property evaluations and appraisals involving all types/classifications of real property, including residential, commercial and agricultural. My appraisals have been accepted by numerous courts in Middle Tennessee, including State and Federal Courts. I have been certified

by and have testified as an expert witness with respect to the appraisal of real property in State and Federal courts in Middle Tennessee.

In performing appraisals and valuations of real property, I follow and utilize the recognized and accepted methods for the estimation of the value of land utilized by licensed real estate appraisers in the State of Tennessee.

I am familiar with the Uniform Standards of Professional Appraisal Practice and the recognized standard of acceptable professional practice applicable to licensed real estate appraisers in the State of Tennessee ("standard of professional practice").

Mr. Segroves agreed with the Billses' assessment of Mr. Smith's appraisal, writing,

It is my professional opinion, based on my forty-four (44) years' experience in the real estate industry and familiarity with the recognized standard of professional practice that the recognized standard of professional practice does not permit a property with no or a minimal portion of its acreage to be used as a comparable when appraising a property in which the vast portion of its acreage is located within the flood zone unless a significant reduction is made to the appraisal price.

He noted that "well over 90% of the 71-acre tract is in the floodplain," and that two of the four properties Mr. Smith relied upon in his appraisal either include "only a tiny sliver . . . within the floodplain" or do not "have any land located within the Floodplain" at all. According to Mr. Segroves, Mr. Smith's choice to include these two parcels while overlooking at least one tract he deemed to be more analogous to the property "deviated from the standard of professional practice . . . and resulted in an appraisal that was substantially inflated." Mr. Segroves opined that Mr. Smith's appraisal "does not conform to the recognized standards of professional practice and that Mr. Smith's valuation of the 71-acre tract of $710,000 ($10,000 per acre) is grossly in excess of the fair market value of the property."

The Bartons moved to enforce the parties' settlement agreement on December 5, 2022. They argued that the parties' settlement agreement contained no provision that would permit the Billses' challenge to Mr. Smith's appraisal. The Billses asserted that the parties' settlement agreement only asked the trial court to appoint an individual recommended by the parties to serve as appraiser and then bound the parties to whatever price the appraiser set for the property. Asserting that the Billses "failed to allege or prove any . . . traditional contract defenses," including but not limited to "fraud, duress, undue influence, or mistake," the Bartons reasoned that the Billses were bound to the purchase price as appraised by Mr. Smith.

- 4 -

The Bartons also took aim at the testimony of Mr. Segroves, urging the trial court not to accept him as an expert. Specifically, they reasoned that Mr. Segroves was not competent to testify about a licensed real estate appraiser's professional standard of care because Mr. Segroves was not a licensed or certified real estate appraiser. The Bartons argued that only a licensed or certified real estate appraiser could legally give the type of opinion Mr. Segroves had purported to render. Finally, the Bartons contended that the Billses' motion was

> based on a fallacy. The fallacy is that because Mr. Segroves quibbled about some of the comparables, there is something wrong with Mr. Smith's appraisal which is so serious that it amounts to a violation of the standards of professional conduct applicable to the profession of real estate appraisers, rules to which Mr. Segroves is not subject. Mr. Segroves and [the Billses] failed to take into account that value is an opinion in this state, that professional appraisers can arrive at different appraisals based on the same or similar evidence, and that such differences do not automatically amount to a violation of their standards of professional conduct.

The Billses' second expert, Mr. Spillman, completed his review of the Smith appraisal two days later. Unlike Mr. Segroves, Mr. Spillman is a Tennessee licensed real estate appraiser. Mr. Spillman opined that Mr. Smith's appraisal "satisfies basic USPAP [tenets] of an appraisal report" and "included adequate data of the subject property and the comparable sale data." However, Mr. Spillman concluded that Mr. Smith ultimately did not adhere to the professional standards of licensed real estate appraisers. Mr. Spillman observed that Mr. Smith "appeared to select comparable sales found in much superior areas as compared to the subject property" and "did not consider adjustments to the comparables for location . . . [or] include discussion of the qualitative adjustments." Specifically, Mr. Spillman objected to three comparables Mr. Smith chose near Shelbyville, Tennessee, asserting that the Shelbyville area "is undergoing significantly greater growth and overall development than the more rural location of the subject [property]." After addressing the perceived deficiencies in Mr. Smith's evaluation, Mr. Spillman opined that Mr. Smith failed to cite "adequately supported market data" while developing his opinion and, consequently, that his submitted purchase price of $710,000 "should not be accepted as the reported value opinion . . . is not appropriate and not reasonable given the data and analyses presented." Mr. Spillman stated that his "primary basis for the rejection of the developed opinion of value is [Mr. Smith's] choice of comparable sales, all with superior locations."[1]

In addition to his report, the Billses also provided an accompanying declaration from

---

[1] Although Mr. Spillman had been retained to conduct an appraisal review, Mr. Spillman offered his own opinion on the value of the property. After engaging in his own appraisal analysis, Mr. Spillman estimated that the Red Hill Road tract should be valued at $4,500 per acre, which is less than half of the $10,000 per acre valuation of Mr. Smith.

Mr. Spillman. In the declaration, Mr. Spillman reiterated the positions that he took in his report with regard Mr. Smith's asserted noncompliance with the professional standards of the USPAP, writing,

> it is my opinion to a reasonable degree of professional certainty that the appraisal completed by Joe D. Smith dated September 30, 2022, . . . was not completed in compliance with the recognized standard of applicable practice applicable for Tennessee licensed real estate appraisers.
>
> . . .
>
> It is [also] my professional opinion, based on a reasonable degree of professional certainty, that the deviations from the recognized standard of acceptable professional practice summarized [above] . . . caused the appraisal of Joe D. Smith dated September 30, 2020[,] to be unreasonable and inappropriately inflated.

The trial court held a hearing on the parties' competing motions on January 20, 2023. Each party relied exclusively on their submitted written materials; there was no live testimony. The Billses conceded during the hearing that Mr. Smith's use of the sales comparison approach was appropriate under the circumstances but argued, "that there was some – I hate to use the term negligence but just the normal standard of care set forth by the Standard of Practice Act was not met here." When the trial court tried to boil down the parties' dispute to a disagreement over the choice of comparables, the Billses responded, "I wouldn't say it's not that we don't like the appraisals or the comps. It is true we don't, but the way I would . . . articulate . . . is we don't think the comps are truly comps to the subject property."

The trial court entered a memorandum denying the Billses' motion to set aside Mr. Smith's appraisal, and it later incorporated that memorandum into an order on February 17, 2023. The trial court agreed with the Bartons' assertion that the parties' settlement agreement did not include "a mechanism for dealing with a price that they disagreed with if they felt that it was necessary" and merely reflected an agreement "that the price reached by the appraiser picked by the Court would be the price" the Billses had to pay for the property. Regarding Mr. Segroves, the trial court concluded that he was not competent to provide an expert opinion on the standards of a licensed appraiser because he is unlicensed:

> While the Court does not doubt the experience and ability of [Mr. Segroves] as a realtor, in fact, [Mr. Segroves] has given expert testimony as a realtor in this very Court, the simple fact is that [Mr. Segroves] is not competent to render what amounts to an expert opinion on the deficiencies in Mr. Smith's appraisal. [Mr. Segroves] is not a licensed appraiser and his affidavit does not assist the Court in determining whether Mr. Smith's appraisal falls below

the standard of care for licensed appraisers.

Additionally, the trial court observed that Mr. Spillman's declaration and report had not been provided to the court. Accordingly, it concluded that the Billses "have not shown the Court a reason by any expert that is qualified to opine why Mr. Smith's appraisal falls below the standard of care." Based on that finding, the trial court concluded,

> What this motion amounts to is purely and simply price remorse on the part of the [Billses]. Mr. Smith was on their list of appraisers. Surely, they would not propose an unqualified appraiser, knowing that his appraisal would lead to the price they ultimately would have to pay.
>
> The rest of the arguments made to the Court concerning the appraisal do not address a violation of the professional standards of the appraiser. They amount to a disagreement about the judgment he made as to the value of the property. Mr. Smith's rationale for his price is ably demonstrated in his appraisal. The fact that the [Billses], who proposed him, now want to nitpick the comparable properties he used is of no consequence to the Court. He used his own professional judgment in finding comparable properties that were in his appraisal, and the Court is entirely comfortable with his choice. There is no proof in the record that Mr. Smith did not employ appropriate professional judgment by not using comparable properties that better suit [the Billses'] view of what [the] price should be, only sour grapes because the price was higher than anticipated.
>
> . . . The Court has been shown no competent reason that the contract should not be enforced. [Mr. Segroves's] opinion is not competent. No other affidavit appears from another appraiser. What remains is only argument of counsel for closer comps and other prices which the parties knew or should have known as they entered mediation and emerged with the agreement. These arguments decry the fact that there is nothing professionally wrong or incompetent in Mr. Smith's appraisal, but that they are dissatisfied with the outcome dictated by the appraiser they proposed.

The Billses filed a motion to alter or amend on March 13, 2023. In their motion, the Billses argued: (1) that the trial court erred by concluding that the parties' settlement agreement immunized Mr. Smith's appraisal from any objections; (2) that the trial court erred in not treating Mr. Segroves's declaration as an admissible expert opinion; and (3) that the trial court erred in overlooking Mr. Spillman's report and declaration. Regarding their third argument, the Billses explained that the Spillman documents had been filed with the court.

After receiving the Bartons' response, which defended the trial court's order on the

merits, the Billses raised a new argument in their reply that Mr. Smith's appraisal was not a sworn document and urged the trial court to disregard Mr. Smith's own statements concerning his purported compliance with the USPAP as self-serving. When the trial court held a hearing on the Billses' motion on April 14, 2023, the Bartons argued that the Billses' novel argument was waived because they had not presented it earlier in the proceedings.

On May 5, 2023, the trial court partially granted the Billses' motion. The Chancellor agreed that the Spillman documents were properly before the court and modified its original memorandum by deleting "[t]he last two sentences of the last paragraph on page 3." Those sentences only pertain to the absence of the Spillman documents, though, meaning the trial court left intact its statement that the Billses had "not shown the Court a reason by any expert that is qualified to opine why Mr. Smith's appraisal falls below the standard of care." Aside from the partial modification, the trial court denied the remainder of the Billses' motion. The trial court agreed with the Bartons that the Billses' new argument related to sworn proof had been waived because they waited to raise the issue until the reply to the Bartons' response to the motion to alter or amend.[2] The trial court reiterated that Mr. Segroves was incompetent to testify. Regarding the Billses' argument that the settlement agreement was open to challenge, the trial court concluded the following:

> I agree with counsel, that the agreement says they agreed to be bound by a licensed appraiser. Show me in the agreement where it says that it has to be done by way of a standard of care overtly, because it's not in there. You're asking me to intertwine an implication, which I am not inclined to do in this circumstance.

> I am not inclined to change the Order other than to acknowledge the fact that [Spillman's declaration] was, in fact, in the file. No, I do not believe that the Court is to add language to an agreement which was made by the parties, and I'm not inclined to do it. The Court is not inclined to change its ruling relative to where we are on the basis of the arguments made.

The Billses appealed. The parties have collectively raised thirty issues on appeal, but many can be grouped together, fall within the scope of larger discussions, or are not

---

[2] Although the Billses advance their sworn testimony argument in their principal brief to this court, they fail to mention that the trial court concluded that the argument had been waived. In their reply brief, the Billses cursorily state that the trial court's waiver finding "has no merit," but fail to cite any supporting authority for why the trial court deeming the sworn testimony argument waived was inappropriate. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). Accordingly, we decline to address that argument in this appeal.

properly before us on appeal. Accordingly, we summarize the relevant issues presented as follows: (1) whether the trial court erred in holding that the Billses could not challenge the Smith Appraisal based on an alleged departure from the standard of care, (2) whether the trial court erred in finding Mr. Segroves' expert opinion inadmissible, and (3) whether the trial court erred in denying the Billses' motion to set aside Mr. Smith's appraisal.

II.

We must first address the threshold question of whether the parties' settlement agreement allows for the Billses to challenge Mr. Smith's appraisal. The trial court concluded the parties' settlement agreement provides for a binding purchase price for the property and is not subject to challenge. If this ruling is correct, then any testimony from Messrs. Segroves and Spillman becomes immaterial.

The Billses disagree with the trial court's assessment, arguing that the parties bargained to be bound by an appraisal that would be administered by someone holding a "Tennessee license (Appraisal)," and that this wording creates either an express or implied condition that whichever appraiser the court would choose to complete the appraisal would comply with the standard of care that governs licensed appraisers—the USPAP. If, as the Billses allege, Mr. Smith departed from that guiding professional standard, the Billses argue that the settlement agreement permits a challenge to Mr. Smith's work on this limited basis.

Courts encourage parties to work amicably to settle legal disputes outside the court system. *Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 599 (Tenn. 1987); *Lovelace v. Copley*, 418 S.W.3d 1, 29-30 (Tenn. 2013) (collecting cases). The parties in this case did just that and memorialized their settlement in a written agreement. "[C]ourts will enforce settlement agreements." *Edmonson v. Wilson*, No. E2010-02215-COA-R3-CV, 2011 WL 6147014, at *3 (Tenn. Ct. App. Dec. 9, 2011) (quoting *Wallace & Wallace, Inc. v. Rosengreen*, C/A No. 688, 1987 WL 5336, at *2 (Tenn. Ct. App. Jan. 16, 1987)); *see also Patton v. Estate of Upchurch*, 242 S.W.3d 781, 790 (Tenn. Ct. App. 2007) ("The trial courts of this state have inherent authority over settlement agreements concerning pending actions."). "A settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement." *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012); *see Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006)

The Tennessee Supreme Court in its 2019 decision in *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.* extensively explored Tennessee's approach to contract interpretation. 566 S.W.3d 671 (Tenn. 2019). Addressing Tennessee decisions on contract interpretation, the Tennessee Supreme Court, therein stated, in part, the following:

Tennessee cases have . . . eschewed an extreme textual approach. Instead, they reflect balance; they demonstrate a definite focus on the written words in the parties' contract, but they also consider evidence related to the situation of the parties and the circumstances of the transaction in interpreting those words. For example, in *Penske Truck Leasing Co. v. Huddleston*, the Court said: "The intention of the parties is to be determined by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms." 795 S.W.2d 669, 671 (Tenn. 1990). Following *Penske*, the Court in *Hughes v. New Life Development Corp.* stated, "The search for the parties' intent should focus on the four corners of the contract, the circumstances in which the contract was made, and the parties' actions in carrying out the contract." 387 S.W.3d 453, 465 (Tenn. 2012) (citations omitted). This Court has similarly held that discerning the contracting parties' intentions includes taking into consideration their situation, their motivations, their respective interests, and other contextual circumstances. *See*, *e.g.*, *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 739 (Tenn. 1977) ("The evidence of intent is to be found in the language used by the parties . . . considered in the light of their respective interests and other relevant circumstances . . . and in the practical construction given to it by the parties . . . ."); *Kroger Co. v. Chem. Secs. Co.*, 526 S.W.2d 468, 471 (Tenn. 1975) ("While this lease contract cannot be varied by oral evidence 'the course of previous dealings, the circumstances in which the contract was made, and the situation of the parties as aids in determining the meaning of the contract—are matters proper to be looked to by the court in arriving at the intention of the parties to the contract.'") [(citation omitted)]; *Ashley v. Volz*, 218 Tenn. 420, 404 S.W.2d 239, 242 (1966) (holding that the parties' "intention may be ascertained by looking to the situation of the parties; the motives which induced the agreement; and the objects and purposes designed to be effected thereby"); *Petty v. Sloan*, 277 S.W.2d [355,] 360 [(Tenn. 1955)] ("In getting at [the parties'] intention we of course do not determine what the state of the mind was of the parties at the time the contract was executed but rather what their intention was as actually embodied and expressed in the instrument as written."); *Stevenson v. Lima Locomotive Works*, 180 Tenn. 137, 172 S.W.2d 812, 814 (1943) ("The intention of the parties ... must be found in the contract itself, as well as the situation of the parties ... and use of the subject matter of the contract.").

In *Hamblen County v. City of Morristown*, [the Tennessee Supreme] Court considered extrinsic evidence in the form of the parties' post-contract behavior, i.e., the rule of practical construction 656 S.W.2d 331, 333-35

- 10 -

(Tenn. 1983). The Court used language that approved consideration of extrinsic evidence of context, even for interpretation of a contract that seemed facially unambiguous, with the important qualification that such evidence cannot be used to modify, expand, or restrict the contract:

> The court in interpreting words or other acts of the parties puts itself in the position which they occupied at the time the contract was made. In applying the appropriate standard of interpretation even to an agreement that on its face is free from ambiguity it is permissible to consider the situation of the parties and the accompanying circumstances at the time it was entered into—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement.

*Hamblen Cnty.*, 656 S.W.2d at 334 (quoting Restatement of Contracts § 235(d) and comment); *see also Burress v. Sanders*, 31 S.W.3d 259, 265 (Tenn. Ct. App. 2000) (quoting Bryan A. Garner, *The Elements of Legal Style* 7 (1991)) (noting that "everything [in contract interpretation] hangs on context and purpose").

Some of the cases with the strongest language on contextual principles also use textual principles as well, and vice-versa. In *Hughes*, the Court used language approving the use of evidence on "the circumstances in which the contract was made, and the parties' actions in carrying out the contract," . . . , but then used the extrinsic evidence primarily to "buttress" the interpretation of the text of the contract . . . . In *Petty v. Sloan*, often cited for its strong language in support of the textual approach, the Court went on to describe extrinsic evidence in the record and explicitly consider it: "In reading and studying this contract we of course must construe it with reference to the situation of the parties, the business to which the contract relates and the subject matter as appears from the words used." 277 S.W.2d at 359 . . . .

Looking at the broad range of Tennessee contracts cases, it is clear that Tennessee courts have sought, albeit imperfectly, to achieve balance in contract interpretation. The central principle endures, to interpret contracts so as to ascertain and give effect to the intent of the contracting parties . . . . In effectuating this principle, our courts have noted that judges "are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described." *Staub v. Hampton*, 101 S.W. [776,] 785

[(Tenn. 1907) (quotation omitted)]. Courts should not be "shut out from the same light which the parties enjoyed when the contract was executed." *Staub*, 101 S.W. at 785 . . . .

However, the strong strain of textualism in Tennessee caselaw demonstrates resolve to keep the written words as the lodestar of contract interpretation . . . . Tennessee has rejected firmly any notion that courts are a fallback mechanism for parties to use to "make a new contract" if their written contract purportedly fails to serve their "true" intentions *See Petty*, 277 S.W.2d at 359 . . . . Tennessee courts "give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence—of the parties' agreement when relations were harmonious, and where the parties were not jockeying for advantage in a contract dispute." [Steven W. Feldman, 21 Tenn. Practice: Contract Law and Practice § 8:14 (June 2018).]

In short, Tennessee cases cite both textualist and contextualist principles; consideration of context evidence does not eclipse other canons of contract interpretation but rather cooperates with them. Thus, as in other states, Tennessee's jurisprudence on contract interpretation "evades tidy classification as textualist or contextualist." [Lawrence A. Cunningham, *Contract Interpretation 2.0: Not Winner-Take-All but Best-Tool-for-the-Job*, 85 Geo. Wash. L. Rev. 1625, 1627 (Nov. 2017).]

*Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 692-94 (footnotes omitted).

The trial court denied the Billses' motion, noting that the settlement agreement included no express language allowing for a challenge to the amount set by the appraiser. The settlement agreement, however, also includes no express language barring a challenge to the appraisal or requiring the Billses to accept an appraisal that was not completed in accordance with the terms of the settlement agreement. Accordingly, we must examine further to determine whether the appraisal being conducted in accordance with professional standards was impliedly part of the parties' settlement agreement.

Generally, when a party contracts to receive services under Tennessee law that contract typically includes an implied guarantee that the relevant professional will "perform the service skillfully, carefully, diligently, and in a workmanlike manner." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 292 (Tenn. 2011) (collecting cases); *see also Fed. Ins. Co.*, 354 S.W.3d at 292 (quoting 17A Am. Jur. 2d *Contracts* § 612 (2011)) ("[T]here is implied in every contract for work or services a duty to perform skillfully, carefully, diligently, and in a workmanlike manner."). Whether a professional carried out their work appropriately is often a context-specific inquiry, depending often "upon whether the service provider exercises or fails to exercise that degree of skill and knowledge normally

possessed by those members of the trade." *Fed. Ins. Co.*, 354 S.W.3d at 292 (quoting 23 Samuel Williston, Williston on Contracts § 63.25 (4th ed. 2011)).

In this context, state law establishes Mr. Smith's standard of professional care as a Tennessee licensed appraiser. According to the State Licensing and Certified Real Estate Appraisers Law (the Appraisers Act), codified at Tennessee Code Annotated section 62-39-101 et seq., "state licensed and/or certified real estate appraisers must comply with the Uniform Standards of Professional Appraisal Practice promulgated by the appraisal standards board of the appraisal foundation and any other duty established standards of the commission." Tenn. Code Ann. § 62-39-329; *see also* Tenn. Comp. R. & Regs. 1255-05-.01(1)–(2) (adopting the "most current edition" of the USPAP "as published and modified from time to time" and mandating that licensed real estate appraisers "shall at all times comply" with the version of the USPAP "in effect at the time the services are performed"). These provisions require licensed appraisers to abide by the USPAP whenever acting under their state-issued real estate appraiser license.

The Bartons did not actually contest the point in the trial court that Mr. Smith was required under the parties' agreement to conduct the appraisal in accordance with professional standards under the USPAP. As the Bartons' counsel stated, the "[Billses'] first [premise] is the assertion that Mr. Smith has a duty to perform according to the applicable standards of professional practice. Well, that's self-evident. He's a professional. . . . He has to follow the rules."

Instead, the Bartons argued, and the trial court agreed, that the parties' settlement agreement simply did not allow the Billses to challenge Mr. Smith's appraisal on the basis of not doing what they agree he was legally obligated to do. We disagree with this argument from the Bartons and this conclusion of the trial court. The parties bargained for a purchase price that was to be established by a state-licensed professional appraiser. That the appraiser was required to be a Tennessee licensed appraiser was an express term of the settlement agreement. Under Tennessee law, a licensed appraiser is required to adhere to certain standards and procedures when conducting an appraisal. Regarding the intersection between background law and the interpretation of contracts, the Tennessee Supreme Court has indicated that

> It is well established that the laws affecting enforcement of a contract, and existing at the time and place of its execution, enter into and form part of the contract . . . . In *Webster*, for example, we observed:
>
> > Those laws which in any manner affect the contract, whether its construction, the mode of discharging it, or which control the obligation which the contract imposes, are essentially incorporated with the contract itself. . . .

- 13 -

*Kee v. Shelter Ins.*, 852 S.W.2d 226, 228 (Tenn. 1993) (quoting *Webster v. Rose*, 53 Tenn. 93, 100 (1871)).

The parties agreed in their settlement that the appraisal would be carried out by a Tennessee licensed appraiser, and a licensed appraiser could under Tennessee law only lawfully provide an appraisal that conforms to the USPAP. *See* Tenn. Comp. R. & Regs. 1255-05-.01(2). Mr. Smith was legally required to abide by the USPAP when conducting the appraisal agreed to by the parties. In reaching a settlement, the Billses agreed to be bound by a professionally performed appraisal in accordance with the requirements of the USPAP. Under an alternative understanding, Mr. Smith could have used a random number generator, rolled dice, or thrown darts to determine the amount, and his appraisal would still not be subject to being set aside.

The Bartons contend that permitting the Billses to challenge Mr. Smith's appraisal will incentivize a never-ending cycle of challenges.[3] The Bartons ask, "What if [the Billses'] requested relief is granted and they are unhappy with the new appraisal or, for that matter, what if the [Bartons] are unhappy with the new appraisal? Do we then repeat the process *ad infinitum* with a motion to set aside that appraisal?" The Bartons' argument misapprehends both the nature of the Billses' objections and the terms of the parties' settlement agreement. The Billses have been transparent in this litigation that they disagree with Mr. Smith's appraised price; however, they have not disputed that, as the parties' settlement agreement plainly states, they would be "bound to the price as appraised" of a USPAP-compliant appraisal. Accordingly, the slippery slope envisioned by the Bartons reaches its terminus far closer than the Bartons fear.

In concluding that the trial court erred regarding the threshold issue, our conclusion is limited to a conclusion that the Billses may challenge the appraisal based upon it having not been conducted in accordance with the minimum standards the USPAP imposes upon licensed Tennessee appraisers. The Billses are not free, and we do not understand their argument to assert otherwise, to prevail because one appraisal is better than another though both meet minimum professional standards for determining valuation.

---

[3] The Bartons also assert that interpreting the settlement agreement to allow a challenge to the appraisal would violate their rights under the Seventh Amendment to the United States Constitution. *See* U.S. Const. amend VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ."). The Bartons do not cite any authority to support their argument that allowing the Billses to challenge the appraisal would violate the Bartons' jury trial rights. Furthermore, the Bartons advance this argument for the first time on appeal. Accordingly, the Bartons' Seventh Amendment argument is waived. *See*, *e.g.*, *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001); *Sneed*, 301 S.W.3d at 615.

III.

With the threshold having been crossed, we next consider whether the trial court erred in concluding that Mr. Segroves's testimony regarding Mr. Smith failing to meet the standards of the USPAP is *per se* incompetent and hence inadmissible because, though Mr. Segroves is licensed real estate broker, he is not a licensed appraiser. The Billses disagree with the trial court's determination that Mr. Segroves's testimony is *per se* inadmissible on this basis, arguing that the trial court misapplied Tennessee Rule of Evidence 702 in reaching this conclusion.

"Issues regarding expert qualifications and the admissibility, relevancy, and competency of expert testimony are matters generally left to the trial court's discretion." *Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 272 (Tenn. 2009). "[T]he Tennessee Supreme Court has directed that we 'should allow discretionary decisions to stand even though reasonable judicial minds can differ concerning their soundness.'" *Conley v. Life Care Ctrs. of Am., Inc.*, 236 S.W.3d 713, 741 (Tenn. Ct. App. 2007) (quoting *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004)). A trial court, however, abuses its discretion and makes a reversible error if it "applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Excel Polymers, LLC*, 302 S.W.3d at 272 (quoting *State v. Scott*, 275 S.W.3d 395, 404 (Tenn. 2009)); *see Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273(Tenn. 2005).

The Tennessee Rules of Evidence permit "a witness qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise" when "scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue." Tenn. R. Evid. 702; *Martin v. Sizemore*, 78 S.W.3d 249, 273 (Tenn. Ct. App. 2001). "A trial court should admit the testimony of a competent expert unless the party opposing the expert's testimony shows that it will not substantially assist the trier of fact or if the facts or data on which the opinion is based are not trustworthy . . . ." *Shipley v. Williams*, 350 S.W.3d 527, 551 (Tenn. 2011); *Brown*, 181 S.W.3d at 274. "Once the minimum requirements are met, any questions the trial court may have about the *extent* of a witness's knowledge, skill, experience, training, or education pertain only to the weight of the testimony, not to its admissibility." *Shipley*, 350 S.W.3d at 551.

The trial court did not deem Mr. Segroves untrustworthy. The opposite is true. In its memorandum denying the Billses' motion to set aside the Smith appraisal, the trial court lauded Mr. Segroves's credentials and observed that he "has given expert testimony as a realtor in this very court." Nevertheless, the trial court concluded that he was incompetent to testify in the present case based upon his lack of licensure as a real estate appraiser.

The Billses contend that the trial court errantly truncated the analysis of the question

- 15 -

of the admissibility of Mr. Segroves's testimony. They note that Mr. Segroves's lack of licensure as an appraiser was the sole reason set forth by trial court for concluding Mr. Segroves's testimony was incompetent and that his testimony could not be considered. The Billses argue that the trial court's order is inconsistent with Tennessee Rule of Evidence 702 and cannot be reconciled with this court's decision in *Martin v. Sizemore*, 78 S.W.3d 249 (Tenn. Ct. App. 2001). *Martin* concerned, in part, whether an individual who was not a licensed architect could provide an expert opinion on whether a licensed architect departed from the relevant standard of care. *See Martin*, 78 S.W.3d 274-75. This court determined in *Martin* that

> a person need not possess either a degree in architecture or an architect's certificate to be qualified to testify as an expert regarding the standard of care of architects and whether particular conduct violates that standard. The witness's qualifications should be evaluated in accordance with Tenn. R. Evid. 702. Accordingly, witnesses should be permitted to give expert opinions regarding an architect's conduct if they possess scientific, technical, or other specialized knowledge derived from their knowledge, skill, experience, training, or education that will substantially assist the trier of fact to understand the evidence or to determine a fact in issue.

*Id.* at 275. Applying *Martin* to the present case, the Billses argue the trial court erred by finding Mr. Segroves *per se* incompetent to testify because of his status as a real estate broker not a licensed appraiser rather than engaging in a holistic assessment of his expert qualifications. In doing so, the Billses contend that the trial court applied the wrong legal standard.

The Bartons disagree with the Billses' contention. Returning to the *Martin* case, they note that the opinion also states, "[i]n circumstances where various professions are competent to work in a particular field, the competence of experts should be judged by whether they meet the minimum standards for that particular field," and assert that the State Licensing and Certified Real Estate Appraisers Law "made it very clear that appraisal of real estate is a very different field from selling real estate and that only appraisers—not brokers—were to perform appraisals." *See id.* at 274; *see also* Tenn. R. Evid. 101 (providing that the Rules of Evidence are subject to the provisions of other relevant statutes). The Bartons further note that the Appraisers Act makes it "unlawful for anyone . . . to prepare an appraisal or an appraisal report relating to real estate or real property in this state without first obtaining a real estate appraiser's license or certificate." *See* Tenn. Code Ann. § 62-39-103(a); *see also* Tenn. Code Ann. § 62-39-319 (classifying the act of providing an appraisal without the required certification or licensure as a Class A misdemeanor). Under the Appraisers Act, the word "appraisal" encompasses "the act or process of developing an opinion of value of identified real estate," including developing an opinion of value "as a relationship to a previous value opinion or other numerical benchmark." Tenn. Code Ann. § 62-39-102(3). Additionally, the Appraisers Act defines

- 16 -

the term "appraisal report" as "any communication, written or oral, of an opinion of value of identified real estate," and that definition even encompasses "an appraiser who testifies as to the value of an identified real property." Tenn. Code Ann. § 62-39-102(6). Taking these parts of the Appraisers Act together, the Bartons argue that Mr. Segroves's objection to Mr. Smith's appraisal is as an "opinion of value," and that Mr. Segroves cannot provide such an "opinion of value" without violating the Appraiser's Act.

While these sections of the Act prohibit a real estate broker like Mr. Segroves from conducting an appraisal or masquerading as a licensed appraiser, they do not directly address whether someone like Mr. Segroves can offer expert testimony in court proceedings on whether a licensed real estate appraiser departed from that appraiser's relevant standard of care under the USPAP.

A different section of the Appraiser's Act, however, does expressly address the testimony of real estate brokers as to valuation in court proceeding. *See Montgomery ex rel. Montgomery v. Kali Orexi, LLC*, 303 S.W.3d 281, 286 (Tenn. Ct. App. 2009) (explaining that courts should interpret a statutory section in the context of "the statutory scheme as a whole"); *see also Faust v. Metro. Gov't of Nashville*, 206 S.W.3d 475, 490 (Tenn. Ct. App. 2006) ("The different parts of a statute reflect light upon each other, and statutory provisions are regarded as *in pari materia* where they are parts of the same act. . . . All parts of the act should be considered, and construed together." (quoting 73 Am. Jur. 2d Statutes § 105 (2005))). The Burtons contend that Mr. Segroves's opinion amounts to an expression of an opinion as to value of the property. Tennessee Code Annotated section 62-39-334 states, however, "This chapter shall not act or be construed to prohibit a real estate broker licensed under Chapter 13 of this title from testifying as to the value of property in court cases as an expert witness and receiving a fee for the testimony subject to review by the court." The Bartons do not dispute that Mr. Segroves holds a real estate broker license issued by the State of Tennessee. The Tennessee General Assembly expressly allows real estate brokers like Mr. Segroves to provide opinions in court related to value without running afoul of state law so long as the individual holds a real estate broker's license. *See* Tenn. Code Ann. § 62-39-334. This is true even though the Appraisal Act defines an appraisal as "the act or process of developing an opinion of value of identified real estate.". *See* Tenn. Code Ann. § 62-39-102(3).

This court has repeatedly noted the difference between officially appraising real estate, which is an act reserved to licensed and certified appraisers, and offering testimony in court proceedings, which is not similarly restricted to licensed appraisers. *See, e.g.*, *Breen v. Sharp*, No. M2016-02415-COA-R3-CV, 2017 WL 5462189, at *6 (Tenn. Ct. App. Nov. 14, 2017) ("Therefore, although Mr. Settles could not appraise the property at issue, the fact he was not a licensed appraiser did not render him incompetent to render an opinion as to the value of the property."); *Bates v. Bates*, No. M2010-02590-COA-R3-CV, 2012 WL 2412447, at *8 ("[W]e conclude that Tenn. Code Ann. § 62-39-103(a) does not prohibit a witness from testifying to the value of real property where such an opinion of

value, rather than the appraised value of property as directed by [Tennessee's condemnation statute] is sought . . . ."); *City of Pulaski v. Morris*, No. M2010-00047-COA-R3-CV, 2010 WL 3732161, at \*3 & n.4 (Tenn. Ct. App. Sept. 23, 2010) (collecting cases) ("While the Morrises are correct that licensed appraisers can testify as to value, they are not the only persons properly admitted as experts."); *City of Lafayette v. Hammock*, No. 01A01-9901-CV-00056, 1999 WL 346217, at \*1 (Tenn. Ct. App. Jun. 2, 1999) ("The City relies on [the Appraiser's Law] as a basis to disqualify Shrum from testifying because he does not hold a real estate appraiser's license. We cannot agree. [The Appraiser's Law] allows a real estate broker to offer an opinion of value in the courts of this State.").

The Appraisers Act establishes that the USPAP will serve as the relevant standard for performance of the duties of licensed and certified appraisers. *See* Tenn. Code Ann. § 62-39-329 (adopting the USPAP). Mr. Segroves offered an opinion asserting Mr. Smith deviated from the standards of the USPAP. Statutory limitations can serve to further restrict the admissibility of expert testimony, but this court has understood the Appraisers Act as allowing real estate brokers, like appraisers themselves, to testify in court proceedings. *Tennessee Dep't of Transp. v. Wheeler*, No. M1999-00088-COA-R3-CV, 2002 WL 31302889, at \*3 (Tenn. Ct. App. Oct. 11, 2002) (concluding that "the trial court erred by permitting Mr. Harris to give an expert opinion regarding the value of the Wheelers' farm because Mr. Harris was no longer a licensed real estate broker when he testified"); *see also* Tenn. Code Ann. § 62-39-334 ("This chapter shall not act or be construed to prohibit a real estate broker licensed under Chapter 13 of this title from testifying as to the value of property in court cases as an expert witness and receiving a fee for the testimony subject to review by the court."). Additionally, we have uncovered no part of the Appraisers Act that prevents an individual who is a licensed real estate broker and who purports to have expert knowledge of the USPAP—which is exactly what Mr. Segroves declared he has in this case—from testifying in a court proceeding about whether a licensed real estate appraiser deviated from the minimum standards under the USPAP. *Cf. Martin*, 78 S.W.3d 274-75; *see also*, *e.g.*, *TMS Contracting, LLC v. SmithGroup JJR, Inc.*, No. M2020-01028-COA-R3-CV, 2022 WL 4112415, at \*6 (Tenn. Ct. App. Sept. 9, 2022), *perm. app. denied* (Tenn. Jan. 11, 2023) (concluding that the lack of engineering degree went to the weight of the testimony but did not render the witness incompetent to testify where the witness had training and experience as to and knowledge about the relevant engineering topics).

The trial court's order reflects its determination that Mr. Segroves' testimony is *per se* incompetent and inadmissible because he is a licensed real estate broker, not a licensed real estate appraiser. Given the General Assembly defining appraisals in relation to the determination of value and expressly indicating that licensed real estate brokers are permitted to testify as to value, and this court's decision in *Martin*, we conclude the trial court applied an incorrect legal standard in determining Mr. Segroves is *per se* incompetent to testify in the present case. Instead, as noted in *Martin*, "[t]he witness's qualifications should be evaluated in accordance with Tenn. R. Evid. 702. Accordingly, witnesses should

- 18 -

be permitted to give expert opinions regarding an [appraiser's] conduct if they possess scientific, technical, or other specialized knowledge derived from their knowledge, skill, experience, training, or education that will substantially assist the trier of fact to understand the evidence or to determine a fact in issue." *Martin*, 78 S.W.3d 275

Mr. Segroves wrote in his declaration that he understands the USPAP, has four decades of experience in the Bedford County real estate market, and benefits from having completed "hundreds" of appraisals.[4] Our conclusion that Mr. Segroves is not *per se* prevented from offering expert testimony because he is not a licensed real estate appraiser is not a determination that Mr. Segroves's testimony necessarily satisfies the relevant Rule 702 standard to be admissible expert testimony or an assessment of relative weight that should be placed upon Mr. Segroves's opinion.[5] Our decision is significantly more limited in scope, only concluding that Mr. Segroves is not, as a licensed real estate broker, *per se* excluded based upon his lack of licensure as a real estate appraiser from offering expert testimony in the present case. The trial court will need to determine on remand whether Mr. Segroves actually satisfies the Rule 702 standard. We remand for the trial court to make such a determination under the proper standard.

IV.

Even assuming for purposes of argument that Mr. Segroves's testimony is inadmissible, the Billses contend that the trial court's order would still be errant based upon inconsistencies related to the expert testimony they presented from Mr. Spillman, a licensed appraiser. We agree.

In partially granting the Billses' motion to alter or amend, the trial court recognized that Mr. Spillman's report and declaration were before it. Accordingly, the trial court deleted two sentences of its original order related to the absence of the materials from Mr. Spillman. Referring to the affidavit of Mr. Spillman, the trial court deleted the following: "The Court can find no such affidavit. Therefore, Plaintiffs have not shown the Court a reason by any expert that is qualified to opine why Mr. Smith's appraisal falls below the standard of care." Contradictorily, the trial court's revised order, however, continued to

---

[4] The Bartons protest the third averment, arguing, "Broker Segroves, presumably being a law-abiding citizen, has not done an appraisal since 1990, the year that the Assembly enacted [the Appraiser's Law] and put him out of the appraisal business." Mr. Segroves's experience, insofar as it is in dispute, is a matter best addressed on remand.

[5] In determining admissibility, the trial court opinion, in part, appeared to address the relative weight of expert opinions, a licensed real estate broker, who is not a licensed appraiser, in contrast to a licensed real estate appraiser. If Mr. Segroves does meet the Rule 702 standard for admissibility, such a consideration is more appropriate as a matter of the weight to be assigned to an admitted expert opinion rather than a basis for exclusion. *Shipley*, 350 S.W.3d at 551 (stating that "[o]nce the minimum requirements are met, any questions the trial court may have about the *extent* of a witness's knowledge, skill, experience, training, or education pertain only to the weight of the testimony, not to its admissibility.")

state the following:

> There is no proof in the record that Mr. Smith did not employ appropriate professional judgment by not using comparable properties that better suit [the Billses'] view of what [the] price should be, only sour grapes because the price was higher than anticipated.
>
> . . . The Court has been shown no competent reason that the contract should not be enforced. [Mr. Segroves's] opinion is not competent. No other affidavit appears from another appraiser. What remains is only argument of counsel for closer comps and other prices which the parties knew or should have known as they entered mediation and emerged with the agreement.

With regard to the alternative basis of the trial court's decision, the primary basis being that the Billses could not challenge the appraisal at all, the trial court's order denying the Billses' motion is predicated upon the absence of a competent professional appraiser indicating that Mr. Smith's appraisal was not in accordance with professional standards under the USPAP.

Even if Mr. Segroves were to be properly excluded as an expert, the Billses presented evidence from Mr. Spillman to this effect. As noted above, Mr. Spillman indicated that Mr. Smith's report was not in compliance with the professional standards of the USPAP, writing,

> it is my opinion to a reasonable degree of professional certainty that the appraisal completed by Joe D. Smith dated September 30, 2022, . . . was not completed in compliance with the recognized standard of applicable practice applicable for Tennessee licensed real estate appraisers.
>
> . . .
>
> It is [also] my professional opinion, based on a reasonable degree of professional certainty, that the deviations from the recognized standard of acceptable professional practice summarized [above] . . . caused the appraisal of Joe D. Smith dated September 30, 2020[,] to be unreasonable and inappropriately inflated.

Accordingly, insofar as the trial court rejected the Billses' motion based upon the absence of evidence, this decision was in error.

In addressing this appeal, we caution that this court has not concluded that Mr. Smith's appraisal was conducted in a manner inconsistent with the required standards of the USPAP. Our decision is considerably more limited in scope. We conclude only that

the Billses have presented evidence that raises this issue, and on remand, the trial court will need to determine whether Mr. Smith's appraisal falls below the relevant standards. In other words, to set aside the appraisal, the Billses will need to show more than just that reasonable minds could disagree on whether Mr. Smith's work is a less than ideal appraisal. They must establish that the appraisal actually falls below professional standards under the USPAP such that they did not get the benefit of the bargain of a professionally conducted appraisal consistent with the relevant professional standards.

V.

For the aforementioned reasons, we reverse in part and vacate in part the judgment of the Chancery Court for Bedford County. Costs of this appeal are taxed to the appellees, Joe B. Barton, and Nancy J. Barton, for which execution may issue if necessary. The case is remanded for further proceedings consistent with this opinion.

_____
JEFFREY USMAN, JUDGE